**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

DARRAN LANG, JERMAINE MOORE, WESLEY CLAYTON,
JAMES RICHARDS, KEITH BASKIN, VICTOR OTEMPONG,
RICHARD WILSON, NATHAN COLLIER, LEBARRON CHATMAN,
LARRY BARDNEY, JUSTIN LEASE, JOSEPH HOLIDAY, JOHN WARE,
GEORGE HUDSON, EFREM WHITFIELD, BRYMON HAMP,
ALCHELLO HOUSE, KEDRIC STEELE, FREDERICK SPIRES,
CALIP JOHNSON, ERIC WAYNE WATKINS, JONATHAN HERRINGTON,
JOSEPH DENNIS, PAUL EVANS, JR., TYREDIES ROBERTS,
ANTONIO GOLDMAN, AIRICK TOINS, ALEXANDER JONES,
ANDREW ALEXANDER, ANDREW GOOD, ANTHONY DAY,
ANTONIO DAVIS, BENNIE MOTTEN, TRAVIS PARTEE
BERNARD WIGLEY, BOBBY MONTSON, BRADLEY MASK,
BRANDON GILMORE, CASIMIR POE, CHARLES SCRIMPSHIRE,
CHARLIE TAYLOR, CHRISTOPHER BALLARD, CURTIS LIPSEY,
DANIEL WILLIAMS, DENNIS JOBE, DILLON CALLAWAY,
DOMINICO SADDLER, DONTE CONNER, MARIO WILLIAMS,
ERIS MOORE, FREDRICK JORDAN, GREGORY HICKS,
JAMES COX, JAMES LEWIS, JAMES SUDDUTH, JERRY BLAND,
JERRY METTETAL, JERRY RICE, JESSE MCCUIN, JODON SLAUGHTER,
JOHNATHAN BURNS, JOHNNY WALLACE, JONATHAN DAVIS,
JONATHAN IVY, JOSHUA BOGAN, KENDRICK TYSON, KEVIN BOYD,
KEYSHUN BURNSIDE, LYNN SPURLOCK, MACK WATTS,
MARLON BRUCE, MONDRICK BRADLEY, NATHANIEL JACKSON,
NETORRIUM TYSON, NEWTON KNIGHT, NICHOLAS CRAWFORD,
NIGEL FARMER, QUINCY ROBERTSON, QY'DARRIOUS TOWNS,
RAYMOND KEITH THOMAS, RICKY JOSEPH GAVIN, ROGER BOYD,
SAMMY MILLER, TERRY PIERCE, TIMOTHY MYERS,
WENDELL DUNCAN, WILFRED POWELL, WILLIE ALLEN,
WILSON HARVEY, CHARLIE HARRIS, CHRISTOPHER SMITH,
CORDARIUS STRONG, JAMMICHAEL STRONG, MARK THOMAS,
JOE WOMMACK, JONATHAN CLARK, JUSTIN HAMMONS,
KEITH MICHAEL STEINMETZ, KENYATTA MCGEE, QUINCY HOLMES,
ROBERT SYLVESTER SMITH, ROMAIRE JAMES EARL BROWN,
TED DEWAYNE CAUTHEN, TRAVIS CARDELL BROWN, TYLER GRAHAM,
TYLER SMITH, GAVIN PIERSON, KENNETH GOWDY, ALEX MORRIS,
BOBBY MITCHELL, CHANCELLOR EATON, CORY PAGE,
EMANUEL RICHARDSON, IRVIN ANDREW PAYNE,
ISSAC GARNER, JAMAR ALLEN, JAMES DOOLEY, LEON RUFFIN,
MARCUS RAMSEY, MICHAEL JONES, MONTRAIL ROBINSON,
RUSSELL REICH, SELLERS JOHNSON, SHAQUILLE JOHNSON,
TERRENCE GATLIN, WILLIAM BRANCH, CHARLES BROWN,
CHARLES CROSS, CHARLES JOHNSON, CHARLES MILES,
DANTAVIOUS HAIRSTON, EMMITT BUCHANAN, ERPHON DAVIS,
GREGORY CANERDY, JABRANDON GREEN, JAMIE ELAIRE,

JANARIAN HILL, JOSEPH LEE REESE, JOSEPH STACK, KEION STANFIELD,
KENTURES MCCOY, KEWAN HOSEY, KRISTOPHER MEISENHOLDER,
LAVARO SADDLER, MARCUS VAUGHN, MARIO RAGLAND,
MICHAEL TARVIN, REMINGTON STEELE, RONALDO ROGERS,
TOMMY HOLT, VINCENT CURLEE, and ZAREK TYLER,

**PLAINTIFFS**

V.                                      CIVIL ACTION NO. ___4:20cv030-DMB-RP___

TOMMY TAYLOR, in his official capacity as Interim
Commissioner of the Mississippi Department of Corrections;
JEWORSKI MALLETT, in his official capacity as Deputy
Commissioner of Institutions for the Mississippi
Department of Corrections; MARSHAL TURNER,
in his official capacity as the Superintendent of the
Mississippi State Penitentiary; GLORIA PERRY,
in her official capacity as Chief Medical Officer
of the Mississippi Department of Corrections;
BRENDA S. COX, in her official capacity as
Chief Security Officer/Warden at the Mississippi State
Penitentiary; TIMOTHY MORRIS, in his official capacity
as Area I Warden of the Mississippi State Penitentiary;
WENDELL BANKS, in his official capacity as Area II
Warden of the Mississippi State Penitentiary; and
CENTURION OF MISSISSIPPI, LLC,              **DEFENDANTS**

## COMPLAINT

### Preliminary Statement

1.      This class action is brought by prisoners at the Mississippi State Penitentiary at

Parchman, Mississippi ("Parchman").

2.      Parchman is a century-old prison farm in the heart of the Mississippi River delta.

The State's only maximum security prison for men, Parchman has swollen to become a sprawling

18,000-acre facility with seven housing units, which operate independently as mini-prisons.

According to the Mississippi Department of Corrections ("MDOC"), Parchman's seven housing

units have 3,650 beds, and its 58 support buildings include a small, 56 bed hospital. In total,

Parchman houses approximately 2,600[1] prisoners, with a substantial portion of the population housed perpetually in punitive units where prisoners spend months, if not years, locked 23-24 hours per day in near or total isolation.

3.     Parchman has been understaffed and underfunded for decades. As a result, prisoners endure abhorrent conditions, abuse and constant violence, inadequate health care and mental health care, and overuse of isolation. The conditions of confinement at Parchman are so barbaric, the deprivation of health and mental health care so extreme, and the defects in security so severe, that the people confined at Parchman live a miserable and hopeless existence confronted daily by imminent risk of substantial harm in violation of their rights under the U.S. Constitution. Accordingly, Plaintiffs respectfully request that the Court enter its order providing the declaratory and injunctive relief requested herein.

**JURISDICTION, VENUE AND JOINDER**

4.     This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The Court has federal question jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1131 and 1343.

5.     Venue is proper in the Northern District of Mississippi under 28 U.S.C. § 1391, as a substantial portion of the events giving rise to the claims in this Complaint occurred in this District.

6.     Joinder of the Plaintiffs listed herein is proper pursuant to Fed. R. Civ. P. 20. Plaintiffs: (a) assert rights to relief jointly that arise out of the same transactions, occurrences, or

---

[1] Since the inception of this litigation, or sister litigation in *Amos v. Turner*, the number of prisoners housed at Parchman has been steadily decreasing. The current number is unknown.

series of transactions or occurrences. Additionally, questions of both law and fact common to all parties will arise in this action, such that the claims at issue share an aggregate of operative facts. However, the joinder of Plaintiffs in this action does not in any way diminish their request for class certification, as the potential class members include all of the approximately 2,600 inmates currently incarcerated at Parchman, as well as those inmates who will be incarcerated at Parchman in the future. Due to the number of potential class members, joinder of all plaintiffs is impracticable. This impracticability is exacerbated as Defendants actively seek to impede potential class members from meeting with counsel.

## PARTIES

### Plaintiffs[234]

7.      DARRAN LANG, MDOC # 19664, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

8.      JERMAINE MOORE, MDOC # 82002, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

9.      WESLEY CLAYTON, MDOC # 52698, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

10.      JAMES RICHARDS, MDOC # 76127, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

11.      KEITH BASKIN, MDOC # 33761, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

---

[2] Each Plaintiff's residence is based on information provided by the MDOC, as of February 21, 2020.

[3] Hereinafter, the term "Plaintiffs" will describe some or all of the 132 Plaintiffs in this action, and, in certain circumstances, additional purported class members.

[4] Each Plaintiff brings these claims on behalf of himself, individually, and the proposed class, as described herein.

12.     VICTOR OTEMPONG, MDOC # 185687, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

13.     RICHARD WILSON, MDOC # 217821, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

14.     NATHAN COLLIER, MDOC # M7319, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

15.     LEBARRON CHATMAN, MDOC # 105464, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

16.     LARRY BARDNEY, MDOC # 27397, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

17.     JUSTIN LEASE, MDOC # 138138, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

18.     JOSEPH HOLIDAY, MDOC # R1642, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

19.     JOHN WARE, MDOC # 39586, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

20.     GEORGE HUDSON, MDOC # K4586, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

21.     EFREM WHITFIELD, MDOC # 112686, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

22.     BRYMON HAMP, MDOC # 105415, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

23.     ALCHELLO HOUSE, MDOC # R7564, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

24.     KEDRIC STEELE, MDOC # 144935, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

25.     FREDERICK SPIRES, MDOC # M7234, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

26.     CALIP JOHNSON, MDOC # 185671, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

27.     ERIC WAYNE WATKINS, MDOC # 35738, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

28.     JONATHAN HERRINGTON, MDOC # 1964113, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

29.     JOSEPH DENNIS, MDOC # 209939, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

30.     PAUL EVANS, JR., MDOC # K9280, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

31.     TYREDIES ROBERTS, MDOC # 217277, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

32.     ANTONIO GOLDMAN, MDOC # L2050, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

33.     AIRICK TOINS, MDOC # 200087, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

34.     ALEXANDER JONES, MDOC # 80653, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

35.     ANDREW ALEXANDER, MDOC # 149044, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

36.     ANDREW GOOD, MDOC # 191365, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

37.     ANTHONY DAY, MDOC # 143703, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

38.     ANTONIO DAVIS, MDOC # 193095, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

39.     BENNIE MOTTEN, MDOC # 196019, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

40.     BERNARD WIGLEY, MDOC # 94312, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

41.     BOBBY MONTSON, MDOC # 80724, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

42.     BRADLEY MASK, MDOC # 201864, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

43.     BRANDON GILMORE, MDOC # L0427, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

44.     CASIMIR POE, MDOC # 216726, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

45.     CHARLES SCRIMPSHIRE, MDOC # 182550, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

46.     CHARLIE TAYLOR, MDOC # R6798, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

47.     CHRISTOPHER BALLARD, MDOC # R3298, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

48.    CURTIS LIPSEY, MDOC # M4254, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

49.    DANIEL WILLIAMS, MDOC # 197451, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

50.    DENNIS JOBE, MDOC # W1201, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

51.    DILLON CALLAWAY, MDOC # 166649, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

52.    DOMINICO SADDLER, MDOC # 108457, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

53.    DONTE CONNER, MDOC # 185136, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

54.    EMMITT BUCHANAN, MDOC # 81955, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

55.    ERIS MOORE, MDOC # 159018, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

56.    FREDRICK JORDAN, MDOC # 51817, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

57.    GREGORY HICKS, MDOC # 78313, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

58.    JAMES COX, MDOC # 149772, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

59.    JAMES LEWIS, MDOC # R9983, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

60.     JAMES SUDDUTH, MDOC # 144850, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

61.     JERRY BLAND, MDOC # 43489, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

62.      JERRY METTETAL, MDOC # 71745, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

63.     JERRY RICE, MDOC # 80626, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

64.     JESSE MCCUIN, MDOC # 153950, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

65.     JODON SLAUGHTER, MDOC # K1780, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

66.     JOHNATHAN BURNS, MDOC # 170268, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

67.     JOHNNY WALLACE, MDOC # K6398, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

68.     JONATHAN DAVIS, MDOC # 185848, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

69.     JONATHAN IVY, MDOC # 103620, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

70.     JOSHUA BOGAN, MDOC # 223071, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

71.     KENDRICK TYSON, MDOC # 81280, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

72.     KEVIN BOYD, MDOC # R9607, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

73.     KEYSHUN BURNSIDE, MDOC # 207635, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

74.     LYNN SPURLOCK, MDOC # 107326, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

75.     MACK WATTS, MDOC # 163550, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

76.     MARCUS VAUGHN, MDOC # 117796, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

77.     MARIO WILLIAMS, MDOC # 161200, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

78.     MARK THOMAS, MDOC # 221424, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

79.     MARLON BRUCE, MDOC # R7465, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

80.     MONDRICK BRADLEY, MDOC # 46406, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

81.     NATHANIEL JACKSON, MDOC # 108462, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

82.     NETORRIUM TYSON, MDOC # 200796, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

83.     NEWTON KNIGHT, MDOC # 197571, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

84. NICHOLAS CRAWFORD, MDOC # 214755, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

85. NIGEL FARMER, MDOC # 208377, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

86. QUINCY ROBERTSON, MDOC # 113548, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

87. QY'DARRIOUS TOWNS, MDOC # 217182, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

88. RAYMOND KEITH THOMAS, MDOC # T0509, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

89. RICKY JOSEPH GAVIN, MDOC # 153557, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

90. ROGER BOYD, MDOC # 179103, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

91. SAMMY MILLER, MDOC # M1768, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

92. TERRY PIERCE, MDOC # 155018, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

93. TIMOTHY MYERS, MDOC # 67139, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

94. WENDELL DUNCAN, MDOC # 32726, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

95. WILFRED POWELL, MDOC #68072 , Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

96.     WILLIE ALLEN, MDOC # 39219, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

97.     WILSON HARVEY, MDOC # M4911, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

98.     CHARLIE HARRIS, MDOC # K5661, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

99.     CHRISTOPHER SMITH, MDOC # M1876, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

100.    CORDARIUS STRONG, MDOC # 216927, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

101.    JAMMICHAEL STRONG, MDOC # 137169, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

102.    JOE WOMMACK, MDOC #59318 , Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

103.    JONATHAN CLARK, MDOC # 174372, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

104.    JUSTIN HAMMONS, MDOC # M5574, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

105.    KEITH MICHAEL STEINMETZ, MDOC # 121529, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

106.    KENYATTA MCGEE, MDOC # 190909, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

107.    QUINCY HOLMES, MDOC # 187729, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

108.    ROBERT SYLVESTER SMITH, MDOC #134136 , Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

109.    ROMAIRE JAMES EARL BROWN, MDOC # 193776, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

110.    TED DEWAYNE CAUTHEN, MDOC # 66274, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

111.    TRAVIS CARDELL BROWN, MDOC # 103148, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

112.    TYLER GRAHAM, MDOC # 111109, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

113.    TYLER SMITH, MDOC # 155793, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

114.    GAVIN PIERSON, MDOC # 141688, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

115.    KENNETH GOWDY, MDOC # 81779, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

116.    ALEX MORRIS, MDOC # 107765, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

117.    BOBBY MITCHELL, MDOC # R3539, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

118.    CHANCELLOR EATON, MDOC # 217138, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

119.    CORY PAGE, MDOC # 114319, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

120.     EMANUEL RICHARDSON, MDOC # 181084, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

121.     IRVIN ANDREW PAYNE, MDOC # 169701, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

122.     ISSAC GARNER, MDOC # 132078, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

123.     JAMAR ALLEN, MDOC # 196129, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

124.     JAMES DOOLEY, MDOC # 106270, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

125.     LEON RUFFIN, MDOC # 150042, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

126.     MARCUS RAMSEY, MDOC # 145007, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

127.     MICHAEL JONES, MDOC # 150374, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

128.     MONTRAIL ROBINSON, MDOC # L3977, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

129.     RUSSELL REICH, MDOC # 117868, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

130.     SELLERS JOHNSON, MDOC # 206592, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

131.     SHAQUILLE JOHNSON, MDOC # 206405, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

132.　TERRENCE GATLIN, MDOC # 185375, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

133.　TRAVIS PARTEE, MDOC # 173738, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

134.　WILLIAM BRANCH, MDOC # 156616, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

135.　CHARLES BROWN, MDOC # 43121, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

136.　CHARLES CROSS, MDOC # 193978, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

137.　CHARLES JOHNSON, MDOC # K1624, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

138.　CHARLES MILES, MDOC # 63183, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

139.　DANTAVIOUS HAIRSTON, MDOC # 219206, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

140.　ERPHON DAVIS, MDOC # 166296, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

141.　GREGORY CANERDY, MDOC # 140445, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

142.　JABRANDON GREEN, MDOC # 194412, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

143.　JAMIE ELAIRE, MDOC # 200674, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

144.     JANARIAN HILL, MDOC # 149694, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

145.     JOSEPH LEE REESE, MDOC # 163663, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

146.     JOSEPH STACK, MDOC # K7247, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

147.     KEION STANFIELD, MDOC # 201869, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

148.     KENTURES MCCOY, MDOC # 147945, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

149.     KEWAN HOSEY, MDOC # 183982, Unit 42, Mississippi State Penitentiary, Parchman, Mississippi.

150.     KRISTOPHER MEISENHOLDER, MDOC # 104020, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

151.     LAVARO SADDLER, MDOC # 107975, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

152.     MARIO RAGLAND, MDOC # 204671, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

153.     MICHAEL TARVIN, MDOC # 13584, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

154.     REMINGTON STEELE, MDOC # 106989, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

155.     RONALDO ROGERS, MDOC # 142643, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

156.    TOMMY HOLT, MDOC # 169654, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

157.    VINCENT CURLEE, MDOC # 169654, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

158.    ZAREK TYLER, MDOC # 188046, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

**Defendants**

159.    Defendant TOMMY TAYLOR is the Interim Commissioner of the Mississippi Department of Corrections ("MDOC").[5] In this capacity, Taylor is responsible for overseeing all aspects of Mississippi's correctional system and ensuring that all prisons under the jurisdiction of MDOC, including Parchman, operate in compliance with state and federal law. This includes, without limitation, all administrative, fiscal and policymaking duties within MDOC and at Parchman. More specifically, but without limitation, Taylor is responsible for: "[e]stablish[ing] the general policy of the Department" (§47-5-20); "implement[ing] and administer[ing] laws and policy related to corrections" (§47-5-28(a)); and "establish[ing] standards. . . and exercise[ing] the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities" (§47-5-28(b)). Taylor is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

160.    Defendant JAWORSKI MALLETT is the Deputy Commissioner for Institutions at the MDOC. Mallett is responsible, together with the Interim Commissioner, for the daily functioning and administration of all MDOC institutions, including Parchman. Mallett has had for

---

[5] By statute, MDOC is "vested with the exclusive responsibility for management and control of the correctional system, and all properties belonging thereto" and "shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein."  Miss. Code Ann. § 47-5-23.

many years, and now has, direct knowledge of the conditions at Parchman, but Mallett has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Mallett is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

161.    Defendant MARSHAL TURNER is the Superintendent of the Mississippi State Penitentiary at Parchman, Mississippi. Turner is responsible for the care, custody and protection of individuals incarcerated at Parchman, including Plaintiffs, and manages the day-to-day operations at Parchman. Turner has had for many years, and now has, direct knowledge of the conditions at Parchman, but Turner has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Turner is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

162.    Defendant GLORIA PERRY is the Chief Medical Officer for the MDOC and leads its Office of Medical Compliance. She is the most senior medical official within the MDOC and reports directly to the Commissioner. In her capacity as Chief Medical Officer, Perry is responsible for approving all MDOC policies related to healthcare, overseeing all specialty care provided to prisoners in MDOC custody, investigating and responding to complaints of inadequate care, and reviewing summaries of prisoner deaths while in custody. Importantly, Perry also is responsible for oversight of Defendant Centurion Mississippi, LLC ("Centurion") to ensure its compliance with its contractual and other obligations at Parchman, as well as other MDOC facilities. Based on information and belief, Perry has, and has had, direct knowledge of MDOC's and Centurion's systemic failure to provide healthcare to inmates at Parchman. Yet, Perry has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Perry is sued in her official capacity.  At all times relevant hereto, she has acted under color of state law.

18

163.     Defendant BRENDA S. COX is the Chief Security Officer and a Warden at Parchman. Defendant Cox has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant Cox is sued in her official capacity. At all times relevant hereto, she has acted under color of state law.

164.     Defendant TIMOTHY MORRIS is the Warden of Area I at Parchman. Defendant Morris has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant Morris is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

165.     Defendant WENDELL BANKS is the Warden of Area II at Parchman. Defendant Banks has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but he has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant Banks is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

166.     Defendant CENTURION OF MISSISSIPPI, LLC, is a limited liability company doing business in, and in good standing with, the State of Mississippi and may be served with process through its Registered Agent, C.T. Corporation System, 645 Lakeland Drive, Ste. 101, Flowood, MS 39232. Defendant Centurion has contracted with MDOC to provide medical, dental and mental health care services to inmates in MDOC's custody at Parchman and other correctional facilities throughout the State of Mississippi and, at all times relevant hereto, was acting under color of state law.

167.    JOHN AND JANE DOE DEFENDANTS are individual defendants who, acting in their official capacity and under color of state law, are responsible, in whole or in part, for conditions at Parchman set forth in this Complaint, but who presently are unknown despite diligent efforts to discover their identity. Plaintiffs expressly reserve the right to substitute persons as Defendants in place of John and Jane Doe Defendants, once their identity and role in this matter is discovered.

168.    XYZ CORPORATIONS are entities, acting under color of state law, with responsibility, in whole or in part, for conditions at Parchman set forth in this Complaint, but which presently are unknown to Plaintiffs despite diligent efforts to discover their identity. Plaintiffs expressly reserve the right to substitute entities as Defendants in place of XYZ Corporations, once their identity and role in this matter is discovered.

## FACTS

### Dangerously Deficient Staffing

169.    Parchman suffers from chronic staff shortages, staff incompetency, and staff corruption that place Plaintiffs and other inmates in constant peril. Stated simply, there are not enough guards at Parchman, so the few guards available avoid interaction with the inmates at all costs. In many instances, there is one – often female – guard for every 160 inmates. As a result, prisoner-on-prisoner violence is rampant, and, at times, is facilitated by corrupt guards seeking to curry favor with inmates. Plaintiffs have witnessed instances where guards have provided cell keys to inmates so they could assault, and sometimes kill, other inmates. Guards attempting to do their jobs adequately are forced to maintain order despite the 160-to-1 ratio of prisoners to guards. Their solution is simply to avoid the housing areas, and the dangers therein, thus leaving the inmates to govern themselves or, worse yet, locked in their cells in perpetual forced isolation. This cycle

persists indefinitely, with some Plaintiffs being held inside, without exposure to fresh air, sunlight or exercise, for years.

170.    In 2019, MDOC issued a press release stating that it needed "help to address staffing." MDOC called the "staffing crisis" a "public safety" concern and admitted the situation at Parchman was a "pressure cooker." Six months later, in December 2019, riots broke out at Parchman in response to abhorrent conditions, lack of basic human needs, and systemic neglect. The violence ushered in the New Year and an unprecedented wave of inmate deaths at Parchman. To date, nine inmates have died in custody at Parchman in 2020; at this rate, Parchman is on pace to break its morbidly shameful record of annual inmate deaths.

171.     Parchman's first death this year was Walter Gates. Gates was stabbed multiple times on New Year's Eve and pronounced dead just after midnight on New Year's Day 2020. Gates was the first, but was not to be the last, stabbing death at Parchman in 2020. In fact, there have been so many stabbings at Parchman this year that it is easy to forget these armed assaults are occurring inside a maximum security prison where the presence of knives and other weapons is supposed to be nonexistent.

172.    The day after Gates died, Roosevelt Holliman was stabbed to death inside Parchman. The following day, Denorris Howell was stabbed multiple times and pronounced dead. A few weeks later, Timothy Hudspeth and James Talley were beaten to death in front of a prison guard.  Though brutally beaten for three hours, the guard in charge of the housing unit did nothing to intervene.

173.    Gabriel Carmen, Thomas Lee and Joshua Norman died at Parchman on January 19, January 22, and January 26, 2020, respectively. According to the Sunflower County Coroner, all three allegedly hanged themselves in their cells. Sadly, there has been so much death recently at Parchman, that the Sunflower County Coroner described the condition at "unprecedented." As

"unprecedented" as it may be, the deadly result of conditions at Parchman should not come as a surprise to Defendants.

174.    In April 2019, the U.S. Department of Justice ("DOJ") issued a report concerning Alabama's Department of Corrections ("ADOC").  In the report, DOJ describes ADOC's staffing deficiencies as "egregious" with "inadequate supervision that results in a substantial risk of serious harm." As serious as the DOJ considered Alabama's staffing shortage, Parchman's staffing ratio is worse. If Alabama's deficient prison staffing presented a "substantial risk of serious harm" to its inmates, how much more do Mississippi's deficiencies, which are greater than Alabama's, risk serious harm to the inmates at Parchman? At the very least, Mississippi's officials are, and for some time have been, on notice that the conditions at Parchman present an imminent risk of substantial harm to inmates.

175.    The takeaway from the DOJ report concerning Alabama is simple: staffing shortages result in violence. This sad fact plays out daily at Parchman. After a stabbing in January 2020, the guard, who also witnessed the assault, simply turned away. That same month, a guard abandoned the tower in one of the housing units, which left the zone unattended while one inmate stabbed another. One Plaintiff was stabbed multiple times in front of a guard and left lying in his cell without medical attention. After yet another stabbing, a guard supervisor peered through the glass to determine the extent of the inmate's injuries, but would not enter the housing zone itself and would not call for help. The inmate died. In yet another incident, a guard watched inmates beat four other inmates – Timmy Hudspeth, James Tally, "Lewis," and Chris "Flip" – for over three hours.  Hudspeth and Tally died. The guard on duty, who had watched the beatings, had to be alerted that one of the inmates had died. A sign was held up stating, "inmate on bed 135 is dead." The guard simply shook his head and said, "I'm not calling anyone." Unfortunately, the guards are not merely inept, but at times they play an active role in the violence. As a result, Plaintiffs have

resorted to tying their cell doors closed at night to prevent guards from allowing other inmates to enter and assault them. In sum, Parchman's atmosphere of violence, and the constant fear it produces, is so pervasive that it touches every Plaintiff psychologically, many Plaintiffs physically, and results in a toxic environment that poisons every aspect of inmate life.

### Living Conditions Not Suitable for Animals

176.    While the violence at Parchman is abhorrent, words cannot adequately describe the degree of filth and dilapidation the men at Parchman live in, and lie in, every day. Were these conditions in existence at an animal shelter, media would swarm, arrests would be made, and those in charge would be on their way to jail as a result of public outrage over this criminal conduct. Yet, when it comes to people incarcerated by the State, even a cry for help by the former MDOC Commissioner does not merit a response, much less a swift and decisive remedy.

177.    In June 2019, former MDOC Commissioner Pelicia Hall issued a report concerning Parchman. The report admitted that "more than 400 cells" had "problems such as flooding and leaks, lack of lights, power and water, broken toilets and sinks, broken windows and bird nests, as well as missing pillows and mattresses." The report documented flies and mold in food containers, improper food storage, exposed wiring, and mildew, along with hundreds of other environmental deficiencies. MDOC concluded that certain housing units were "unsafe for staff and inmates because of age and general deterioration." While accurate, the MDOC inspection report does not do the wretched conditions justice.

178.    The conditions inside Parchman are medieval. The light fixtures in many housing units are missing or hanging from ceilings with twisted metal edges and exposed wires. There are holes in nearly every wall including many where light switches used to be. A large number of the cells have no electricity, so they stay dark and wet continuously. In many units inmates have erected makeshift electrical grids with exposed electrical wires running across the units, some

hanging low enough to touch and others snaking through puddles of water and into individual cells. Many of these makeshift extensions cords are homemade with shards of razor blades and electrical tape fashioned into plugs.

179.     The plumbing, sewer, and water systems at Parchman are in a perpetual state of systemic failure. The toilets routinely back up and flood the prison cells, which allows fecal matter, urine and water to cover the floors and drain out into the housing unit's common space. Inmates use rags made from their clothing, towels and linens to clean up sewage by pushing the feces out of their cells and into the walkways. Cardboard boxes have been torn and cut to erect makeshift barriers in the bars of the cells to deter rats from entering the cells in search of food. Plaintiffs endure sleepless nights in fear of packs of rats descending on them in their bunks. There can be no doubt these conditions take their toll both physically and psychologically, as the relentless cacophony created by the cries of human suffering and violence pervade each inmate's experience at Parchman.

180.     The potable water system at Parchman is contaminated with human feces, presumably from the sewer system, has failed to meet safety standards, and has been cited for violation of the Federal Clean Water Act. The sinks, showers, and toilets often run constantly or not at all. Plaintiffs at times go for months without showers. However, there seems to be no shortage of water flowing through the decrepit roofs and into the cells, and bunks, of Plaintiffs. Not surprisingly, the persistently wet conditions have resulted in dangerous black mold, and mildew, not to mention the dehumanizing effect on inmates living perpetually isolated in cold, dark, damp cells. These conditions are alleviated only as summer approaches, when they are exchanged for boiling hot temperatures and stifling humidity. Plaintiffs suffer from one extreme to the other as Parchman lacks heat in the winter and air conditioning in the sweltering Mississippi summer.

181.    Despite actual knowledge of the foregoing, Defendants' feckless response to the inhuman conditions at Parchman has been to throw a coat of paint on certain zones in Unit 29, which is an odd response, as Unit 29 is slated for immediate closure.

### Contaminated Food and Poor Nutrition

182.    The kitchen facilities and food service at Parchman are nauseating. The most recent annual inspection by the Mississippi Health Department in June 2019 lambasts the conditions finding containers of dried, spoiled and molded food, flies and other pests in the kitchen, food maintained in coolers at unsafe temperatures, collapsing ceilings, and other unhealthy food preparation and storage conditions. The inmates receive meals that are undercooked and served at unsafe temperatures. Many times, the food is adulterated with rat feces, cockroaches, rocks, bird droppings, and other foreign matter.

183.    Perhaps more disconcerting, meals at Parchman are not guaranteed. Administrative dysfunction renders an accurate count of inmates impossible, which in turn results in too few meals being prepared. The meals that are prepared are served late, or not at all, and at times are withheld as a disciplinary measure. Staffing shortages require the meals to be driven to certain units and left outside for inmates, not guards or staff, to serve. Since guards are unwilling to enter the zones themselves, inmates called "floor walkers" deliver the meals, but they often steal food or refuse to serve certain inmates. These conditions deny inmates, including Plaintiffs, Constitutional guarantees to adequate nutrition.

### Poor Heath Care and No Mental Health Care

184.    Among the litany of abhorrent conditions at Parchman, perhaps the most surprising is the health care system. Defendants preside over a healthcare system that costs tens of millions of dollars annually, but callously ignores human suffering, is rife with incompetence, and fails to provide consistently even the most basic healthcare to Plaintiffs.

25

185.    Although the State of Mississippi pays Defendant Centurion tens of millions of dollars annually, Plaintiffs and other inmates routinely are denied adequate health care through a bureaucratic system fraught with corruption and incompetence. For instance, inmates must fill out a "sick call" request form in order to see a nurse. Forms often are not available to inmates. If the inmate can get a copy of the form and complete it, he then must get a guard, a nurse who happens to pass by his cell occasionally, or a floor walker to collect the form and deposit it in the proper location. If this occurs, then there often is a weeks-long delay before any response is received. If a medical clinic visit is finally approved, the inmate must hope for a guard to be available on the day of the appointment to transport him to sick call. If a guard is not available, or is unwilling, then the inmate is simply marked by the medical personnel as "refused care." Plaintiffs who are eventually transported to sick call are often subjected to a system of graft that requires payment of a bribe to the guard for transportation to the medical clinic. The going rate is $40 per visit, which is far more than the average insurance co-pay.

186.    If an inmate successfully navigates Parchman's maze of corruption and incompetence, and is lucky enough to actually see a medical provider, the care is wholly inadequate. Office visits are often noted in the record upon arrival as having occurred, and then the inmate immediately is transported back to his cell without ever being examined. If there is an examination, it often is made in the common area without privacy, or in a case manager's office, rather than in an examination room. Inmates who are diagnosed with a condition seldom receive follow-up care and often no follow-up medication. Rapid, unintentional weight loss is not recorded or investigated; elevated blood pressure is not monitored; and medical records are not sufficiently maintained. Many inmates, including Plaintiffs, are in dire need of medical care for cancer, lupus, serious heart defects, Rheumatoid Arthritis, deteriorating joints and muscles, swollen prostate glands, and open, festering wounds. Neither are Defendants providing adequate accommodations

26

and care for inmates who are blind, handicapped, or wheelchair bound, leaving these men vulnerable to their able bodied, male counterparts.

187.    Broken bones, abscesses, diabetes, and a host of other injuries and maladies routinely go without examination, much less medically effective treatment, at Parchman. For example, Plaintiffs in this action insert their own catheters, treat their own stab wounds, vomit up blood, teeter on the verge of diabetic comas, and suffer through seizures without medical care. Even a broken neck can go without treatment at Parchman, with the inmate being left to suffer through his injury while sleeping on exposed, steel bedsprings with no mattress. So bad is the medical care at Parchman that inmates have resorted to lighting fires in conditions of total confinement, where escape from smoke and flames is impossible, simply to draw attention to emergent medical issues occurring in the housing units.

188.    As bad as the medical care is at Parchman, the mental health care is worse. In fact, it is virtually nonexistent. There is no legitimate mental health screening program for inmates and, for those inmates who have been diagnosed with mental illness prior to arriving at Parchman, there is no treatment. Mental health professionals rarely visit the housing units to speak with inmates, and when they do they provide only cursory, non-confidential "check-ups" to inmates, many of whom are suicidal or suffer from serious mental illness. There are examples of inmates with past instances of suicide, or who have voiced suicidal inclinations, committing suicide in Parchman after their cries for help are endlessly ignored. Thomas Lee hanged himself after pleading with a guard to help him. Based on information and belief, he was never afforded the opportunity to see a psychiatrist. His last words were, "I'm tired of this shit. They don't care about me or my food. I'm about to kill myself!"

189.    One Plaintiff was diagnosed with Post Traumatic Stress Disorder prior to arriving at Parchman, and has requested numerous times unsuccessfully to be seen by a psychiatrist.

Another Plaintiff has had multiple suicide attempts, but has received little or no mental health treatment. By allowing this pattern to continue, Defendants perpetuate their ability to provide substandard care. With fewer inmates diagnosed, there are fewer inmates to treat, which means less work for Defendants and more profit for Centurion.

**Exhaustion of Administrative Remedies**

190.    Plaintiffs have exhausted, or should be deemed to have exhausted, all administrative remedies available to them.

191.    The administrative remedy program at Parchman ("ARP"), which is intended to provide Plaintiffs a mechanism for their grievances to be heard and acted upon within 90 days, is so broken and ineffective that essentially there is no ARP at Parchman.

192.    Plaintiffs do not have ready access to ARP forms. The forms must be requested from a guard. Since guards know that ARP grievances often concern guard behavior, guards predictably are not enthusiastic about providing forms to inmates. If an inmate cannot get a form, the grievance process for that inmate ends immediately. If the inmate does get his hands on a form, he still must have the guard's assistance to collect the form and ensure it reaches the ARP boxes. Guards routinely are witnessed discarding or ripping up completed ARP forms. If a completed form does find its way to the box labeled ARP, it often languishes for months before reaching the ARP administrator, if ever. For the few forms fortunate enough to actually be reviewed by the administrator, most are denied. The lengths to which Defendants will go to deny grievances is comical. For example, a grievance will be denied if an inmate mentions both leaks and water, or rats and mold, as these are deemed to be a violation of the rule requiring only one grievance per form. Even more insidious, many ARP forms are not addressed by the administrator until after the appeal deadline has passed. In this way, Defendants ensure that inmate grievances that ultimately are denied cannot be appealed.

193.    Based on information and belief, many Plaintiffs have been held in isolation in segregated units for months or years. These Plaintiffs, as a product of their segregated incarceration, have been denied access to ARP forms while in punitive units. Given that these Plaintiffs have been precluded from receiving ARP forms during their segregated incarceration, and that their period of segregated incarceration has lasted more than 90 days, these Plaintiffs should be deemed to have exhausted their administrative remedies.

194.    Notwithstanding the foregoing, Plaintiffs have affirmed by declaration that they collectively have filed ARP grievances on substantially all of the issues touched by this Complaint, and these grievances either have been denied, never were received, or never were acted upon by the ARP administrator and Defendants.

195.    A foundational assumption underlying the concept of exhaustion is that genuine administrative remedies, and the due process they are accorded, are actually available to inmates. If administrative remedies are not genuinely available, then Plaintiffs cannot be held to the exhaustion standard as a bar to the courts. Parchman's ARP is a façade. It is a remedy procedure in name only. In fact, Parchman's ARP is designed intentionally to provide the illusion of an administrative remedy program without affording grievances any consideration at all, much less actual due process. Without due process vis-à-vis a legitimate administrative remedy program, Plaintiffs cannot be divested of their rights to the courts. Accordingly, Plaintiffs respectfully request that the Court find that Plaintiffs have exhausted the administrative remedies available to them at Parchman, which are effectively none.

## Incorporation

196.    Each section herein, under any heading or no heading at all, is incorporated into every other section herein, such that this Complaint is to be read as a whole. All factual allegations apply to all claims, to the fullest extent possible.

## CLASS ACTION ALLEGATIONS

197.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

198.    Plaintiffs seek to represent a class consisting of all prisoners who are now as of the date of the filing of this action, or will in the future be, confined at Parchman.

199.    There currently are approximately 2,600 inmates confined at Parchman. The members in the class are too numerous, and the membership of the class too fluid, to permit joinder of all members. All class members are subject to the unconstitutional and unlawful conditions described in this Complaint, and common questions of law and fact exist as to all class members and all Defendants. Common questions include, without limitation, whether conditions of confinement for inmates at Parchman violate their rights under the Eighth and Fourteenth Amendments to the United States Constitution; whether systemically inadequate medical, mental health and dental care provided to inmates at Parchman violates their rights under the Eighth and Fourteenth Amendments to the United States Constitution; and whether the policies, procedures and actions of MDOC in administering Parchman, generally, and administering its housing conditions, safety, and medical care, specifically, but without limitation, fail to satisfy the Eighth and Fourteenth Amendments to the United States Constitution. These questions of law and the resulting claims are typical to all potential class members. Plaintiffs, and their counsel who are experienced civil litigators, are capable of fairly representing the class.

200.    Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## CLAIMS FOR RELIEF

### CLAIM I: Eighth Amendment

201.    Defendants have acted, and continue to act, with deliberate indifference to Plaintiffs' serious health and safety needs, and have violated their rights under the Eighth Amendment to the United States Constitution, by consciously subjecting Plaintiffs to the grossly inhumane and dangerous conditions of confinement and to the extreme deprivations of basic medical and mental health care.

### CLAIM II: Denial of Procedural Due Process

202.    Plaintiffs have been, and continue to be, subject to confinement in segregated or punitive units, buildings and/or zones that impose upon them atypical and significant hardships in relation to the ordinary incidents of prison life without affording Plaintiffs minimal notice, the opportunity to be heard, and other basic procedural safeguards. As a direct and proximate result, Defendants have denied, and continue to deny, Plaintiffs due process in violation of their rights under the Fourteenth Amendment to the United States Constitution.

### CLAIM III: 42 U.S.C. § 1983

203.    Defendants, under color of state law, have deprived, and continue to deprive, Plaintiffs of their rights, privileges, and/or immunities secured by the Constitution and laws of the United States. As a direct and proximate result, Plaintiffs have suffered harm and continue to suffer harm, as described herein.

### CLAIM IV: 42 U.S.C. § 1983 - Environmental Conditions

204.    Defendants have acted, and continue to act, with deliberate indifference to Plaintiffs' serious health and safety needs, and have violated their rights under the Eighth Amendment to the United States Constitution, including, without limitation, by (1) knowingly allowing Plaintiffs to be subject to living conditions wherein rats, insects, and other vermin run

freely through the housing units, through the cells, over the bunks and the inmates, and into the food; (2) knowingly allowing Plaintiffs to be subject to living conditions wherein water from rain, sinks and toilets runs freely through the housing units and through the cells; (3) knowingly allowing Plaintiffs to be subject to living conditions wherein water intrusion has resulted, and continues to result, in mold and mildew formation including "black mold;" and (4) knowingly allowing Plaintiffs to be confined to living conditions over long periods of time wherein Plaintiffs lack ventilation, electricity, clean water, functioning toilets, showers, exposure to sunlight, exercise, and heat.

### CLAIM V: 42 U.S.C. § 1983 - Safety

205.   Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by, (a) by knowingly enabling, or failing to protect Plaintiffs from, inmate violence; (b) by knowingly enabling, or failing to protect Plaintiffs from, violence at the hands of guards or others; (c) by failing to act in emergencies to protect Plaintiffs from violence at the hands of inmates and/or guards; and (d) by knowingly allowing conditions that foment violence not only to persist but to flourish.

### CLAIM VI: 42 U.S.C. § 1983 - Nutrition and Food Safety

206.   Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, as a result of inadequate nutrition and/or dangerous food. Plaintiffs have been, and continue to be, served food infested with rat feces, cockroaches, insects, rocks, bird feces and other contaminants. Food is served to inmates cold and undercooked. Many inmates do not receive meals, and often meals are withheld by guards, as a punitive measure, or other inmates who are allowed to serve food.

## CLAIM VII: 42 U.S.C. § 1983 - Health Care

207.    Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by failing to timely provide medically necessary care from the routine to the emergent. This includes, without limitation, failure to provide basic healthcare, competent wound care, a functioning and accessible sick call, identification and treatment of chronic conditions, provision of short and long term medications, special diets for medical conditions, and accommodations for long term disabilities.

## CLAIM VIII: 42 U.S.C. § 1983 - Mental Health Care

208.    Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by failing to provide Plaintiffs any meaningful mental heath services. The deficiencies run the gamut from failure to properly screen Plaintiffs for mental health issues, to failure to document mental health issues, to failure to treat and/or accommodate Plaintiffs who have been diagnosed with mental health conditions.

## CLAIM IX: 42 U.S.C. § 1983 - Access to Courts / Retaliation

209.    The U.S. Constitution affords Plaintiffs the right to access the courts without unreasonable interference. Yet, Defendants, their agents, and employees have erected barriers designed intentionally to frustrate Plaintiffs' efforts to secure counsel and bring non-frivolous claims against Defendants regarding conditions at Parchman. By doing so, Defendants are following a time-honored tradition at Parchman of hiding shameful conditions, not only by concealing them behind barbed wire, high walls and locked doors, but also by denying Plaintiffs the ability to seek redress in open court.

210. Since the filing of *Amos v. Turner*, Defendants, without a justifying legitimate correctional purpose, have: (a) engaged their labyrinthine bureaucracy, and its endless parade of unwritten rules, policies, and procedures, to thwart meetings between Plaintiffs and counsel; (b) created forms and other formal requirements that did not exist, or were not enforced, previously to impede access to counsel; (c) ransacked Plaintiffs' cells under the guise of seeking contraband in order to justify confiscating legal papers; (d) used inmate transfers from one unit to another, often the day before an attorney visit, as an excuse to delay the visit or cancel it altogether; and (e) most egregiously, perpetrated violence, or threatened violence, against Plaintiffs for meeting with counsel and/or participating in this lawsuit.

211. For example, Defendants, after *Amos v. Turner* was filed in this Court, altered their longstanding procedure governing attorney visits with inmates. Without a concomitant written policy, Defendants began requiring inmates, including Plaintiffs, who wished to meet with their counsel, to complete the cumbersome Inmate Legal Assistance Program ("ILAP") form that serves no correctional interest but is designed solely to frustrate or impede Plaintiffs' right to counsel.

212. The ILAP form relates to ILAP requests, where an inmate is requesting legal assistance through the ILAP office. This is inapplicable to inmates, such as Plaintiffs, who already have counsel or know the specific counsel they wish to engage. Nevertheless, Plaintiffs and other inmates with counsel are now required to complete the ILAP form, which requires detailed information including the attorney's address. This is an intentional barrier to inmates securing counsel which serves no legitimate correctional interest. In fact, Defendants know that inmates, including Plaintiffs, who are incarcerated, often in segregation, do not know their attorney's address. This is especially true when family members hire counsel for inmates, including Plaintiffs. Without the attorney's address, Plaintiffs and other inmates cannot complete the ILAP form and cannot meet with counsel.

213.   Similarly, even when Plaintiffs and other inmates successfully complete the complicated ILAP form, still they are routinely, and in the cases of some inmates, repetitively, denied access to counsel.

214.   Defendants, with deliberate indifference, by their policies, procedures, and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by taking actions that delay or prevent Plaintiffs from communicating with counsel and accessing the courts; by failing to take action necessary to facilitate reasonable communication with counsel and access to the courts. Delayed access to counsel, is delayed access to the courts, which results in prolonged exposure to the conditions complained of herein and the associated risks of imminent harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.   Declare that this action is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b).

2.   Issue a judgment declaring that the actions of Defendants described herein, along with those acting under their authority, at their direction, or on their behalf, are unlawful and violate Plaintiffs' rights under the laws and Constitution of the United States;

3.   Preliminarily and permanently enjoin Defendants, along with those acting under their authority, at their direction, or on their behalf, from subjecting Plaintiffs to the conditions set forth in this Complaint;

4.   Order Defendants to develop and implement a plan, as soon as practical but no later than 90 days, to eliminate the substantial risk of harm to Plaintiffs caused by the environments, health and safety conditions described in this Complaint, and/or existing at Parchman in violation of Plaintiffs' Constitutional rights;

5.   Order Defendants to develop and implement a plan, as soon as practical but no later than 90 days, to eliminate the substantial risk of harm to Plaintiffs caused by the retaliation against, and/or threats and/or abuse of inmates for, seeking access to counsel and/or the courts;

6.   Grant Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

7.   Retain jurisdiction over this matter until Defendants have fully complied with all orders of this Court; and

8.   Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Marcy B. Croft

_____

Marcy B. Croft (MS Bar # 10864)
Carson H. Thurman (MS Bar # 104871)
MARON MARVEL BRADLEY ANDERSON
& TARDY LLC
200 South Lamar Street
Jackson, Mississippi 39201
Telephone: (601) 960-8630
Facsimile: (601) 206-0119

**COUNSEL FOR PLAINTIFFS**

Thomas G. Bufkin (MS Bar # 10810)
CARROLL BUFKIN, PLLC
1076 Highland Colony Parkway
600 Concourse, Suite 125
Ridgeland, Mississippi 39157
Telephone: (601) 982-5011
Facsimile: (601) 853-9540

**COUNSEL FOR PLAINTIFFS**