**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

MICHAEL AMOS, DARRAN LANG, PITRELL BRISTER, CALEB BUCKNER, WILLIE FRIEND, DANIEL GUTHRIE, WILLIAM GREEN, JUSTIN JAMES, ARIC JOHNSON, TERRANCE MCKINNEY, IVERY MOORE, KURIAKI RILEY, DERRICK ROGERS, TYREE ROSS, H.D. ALEXANDER SCOTT, DEANGELO TAYLOR, LEMARTINE TAYLOR, CONTI TILLIS, DEMARCUS TIMMONS, CARLOS VARNADO, PHILLIP D. WEBSTER, ADRIAN WILLARD, CURTIS WILSON, WILLIE J. ALLEN, RANDY ANDERSON, CEDRIC ANDREWS, LARRY BARDNEY, KEITH BASKIN, JERRY BLAND, JOSHUA BOGAN, ROGER BOYD, MONDRICK BRADLEY, WILLIAM BRANCH, DWAYNE BRIDGET, NICHOLAS BROOKS, ERIC BROWN, FREDERICK BROWN, ROMAIRE JAMES EARL BROWN, TRAVIS CARDELL BROWN, EMMIT BUCHANAN, DILLON CALLAWAY, LEBARRON CHATMAN, JOHNATHAN CLARK, JERRY CALVIN COLLIER, JOHNNY COLTON, JAMES COX, CHARLES CROSS, VINCENT CURLEE, RICKY DARDEN, JOHN DAVIS, ANTHONY DAY, JOSEPH DENNIS, MICHAEL A. DILLARD, TRENT M. DORA, WENDELL DUNCAN, JAMIE ELAIRE, PAUL EVANS, JR., NIGEL FARMER, ANTRON FINKLEA, TROY JAMES FORD, MICHAEL FREEMAN, RICKY FRIERSON, TERRENCE GATLIN, RICKY JOSEPH GAVIN, RANDIE GAYDEN, THOMAS GERMAN, BRANDON GILMORE, WILLIAM GOLDEN, JR., ANDREW GOOD, TYLER GRAHAM, JABRANDON GREEN, DEWAUN GRIFFIN, DANTAVIOUS HAIRSTON, BRYMON HAMP, CHARLIE HARRIS, JONATHAN HERRINGTON, WILSON HERVEY, GREGORY HICKS, JANARIAN HILL, JOSEPH HOLIDAY, QUINCY HOLMES, ANTONIO HOOVER, FRANK JACKSON, NATHANIEL JACKSON, WILLIAM JACKSON, MICHAEL JAMISON, CHARLES LAMAR JOHNSON, QUINCY JOHNSON, SAMMIE JOHNSON, SELLERS JOHNSON, XAVIER JOHNSON, ALEXANDER JONES, WILLIAM RAY JONES, JUAREZ KEYES, TONY KEYES, JONATHAN KEY-IVY, TOMMY KIMBLE, CORDERRIUS KING, ANTONIO KNOWLES, MALCOM LATHAN, TONY RAY LEAKS, JUSTIN LEASE, BILLY LEE, LEGRANE LENOX, JAMES LEWIS, ALVIN LUCKETT, STANLEY LUSTER, TED MANGUM, CHAD MARSHALL, KENYATTA MCGEE, JERRY METTETAL, CHARLES MILES, ERIS MOORE, JERMAINE MOORE, KERRY MORGAN, BENNIE MOTTEN, BRIAN NETTLES, EDUARDO NICHOLS, MICHAEL OLIVER, ISRAEL PAGE, IRVIN ANDREW PAYNE, MARSHALL PHILLIPS, XAVIER PHILLIPS-BOWMAN, TERRY PIERCE, GAVIN PIERSON, CASIMIR POE, RANDY POGMORE, WILFRED POWELL, MAURICE PUGH, MARIO RAGLAND, JOSEPH

LEE REESE, FRANK RICE, JERRY RICE, EMANUEL RICHARDSON, TYREDIUS ROBERTS, MONTRAIL ROBINSON, RONALDO ROGERS, LEON RUFFIN, JR., MICAH RUFFIN, CEDRIC RUSSELL, DOMINICO SADDLER, LAVARO SADDLER, DARYL SHINN, LONNIE SIMS, HERMAN SIPP, JR., JODON SLAUGHTER, TYLER SMITH, SEAN SPOTTS, LYNN SPURLOCK, JOSEPH STACK, JOSEPH STANFORD, KEDRIC STEELE, REMINGTON STEELE, KEITH MICHAEL STEINMETZ, DARWIN STRAHAN, DEMARQUIS TATE, CHRISTOPHER THOMAS, ERIC THOMAS, RAYMOND KEITH THOMAS, PAUL THOMPSON, AIRICK TOINS, QY'DARRIOUS TOWNS, SERGE TRULLET, CARLOS TWILLIE, NETORRIUM TYSON, JERRY VANWAGNER, LINNOX WALKER, JOHNNY WALLACE, ERIC WAYNE WATKINS, MACK WATTS, COREY JAMES WELLS, JOSEPH WESTBROOK, EFREM WHITFIELD, BERNARD WIGLEY, DANIEL WILLIAMS, MARIO WILLIAMS, RICHARD J. WILSON, JOE WOMACK, and DOMINIC YOUNG,

**PLAINTIFFS**

v.                                                    CIVIL ACTION NO. 4:20-cv-00030-DMB-RP
                                                      *Consolidated With*
                                                      CIVIL ACTION NO. 4:20-cv-00007-SA-JMV

NATHAN "BURL" CAIN, in his official capacity as Commissioner of the Mississippi Department of Corrections; JEWORSKI MALLETT, in his official capacity as Deputy Commissioner of Institutions for the Mississippi Department of Corrections; TIMOTHY MORRIS, in his official capacity as the Superintendent of the Mississippi State Penitentiary; DONALD FAUCETT, in his official capacity as Chief Medical Officer of the Mississippi Department of Corrections; LEE SIMON, in his official capacity as the Warden of Area I of the Mississippi State Penitentiary; TRACY MCDONALD, in their official capacity as the Warden of Area II of the Mississippi State Penitentiary; SONJA STANCIEL, in her official capacity as Chief of Security of the Mississippi State Penitentiary

**DEFENDANTS**

## SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.      This class action is brought by men incarcerated by the Mississippi Department of

Corrections and housed at the notorious Mississippi State Penitentiary in Parchman, Mississippi

("Parchman"). The men specifically named in this Second Amended Complaint are collectively referred to throughout as "Plaintiffs."

2. Parchman is a century-old prison farm established on the grounds of a former slave plantation in the heart of the Mississippi River Delta. The facility chosen by the Mississippi Department of Corrections to serve as the state's penitentiary for decades, Parchman has ballooned over time to become an unmanageable 18,000-acre facility with seven different housing units, which effectively operate as independent mini-prisons. According to the Mississippi Department of Corrections ("MDOC"), Parchman's seven housing units have a total of 3,650 beds, and its 58 support buildings include a small, understaffed, and underfunded 56 bed hospital, known as Unit 42. In total, Parchman currently houses approximately 1,900 prisoners, with a substantial portion of the population housed perpetually in punitive units where people spend months, if not years, locked 23-24 hours per day in near or total isolation.

3. Parchman has been understaffed and underfunded for decades. As a result, prisoners endure abhorrent conditions, abuse, constant violence, inadequate health care, non-existent mental health services, an overuse of isolation, and a virtually non-existent administrative infrastructure at the facility. The problems are so systemic and overwhelming that a need for additional investment in correctional staffing and infrastructure were cited by former MDOC health care provider, Centurion of Mississippi, LLC (hereinafter "Centurion"), as the alleged basis in its July 7, 2020 letter for cancelling its $200 Million contract with the state. While health care and food vendors have changed throughout the MDOC system, at Parchman, the same failed operating procedures and staff remain in place. Indeed, the conditions of confinement at Parchman are so barbaric, the deprivation of health and mental health care so extreme, and the defects in security and administration so severe, that the people confined at

Parchman live a miserable and hopeless existence confronted daily by imminent risk of substantial harm in violation of their rights under the U.S. Constitution.

4.     The Plaintiffs, individually and as class, hereby sue Defendants in their respective, specified individual and official capacities for their joint and several actions that constitute deliberate indifference to the Plaintiffs' safety, conditions of confinement, serious medical and mental health needs, and right to access to the Courts, among other deprivations specified herein, in violation of their clearly established Eighth and Fourteenth Amendment rights under the United States Constitution.  Federal law, including 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies for these deprivations as to all Plaintiffs.

5.     Accordingly, Plaintiffs respectfully request inter alia that the Court enter its order providing the declaratory, injunctive, and equitable relief requested herein against all Defendants.

6.     As detailed *infra*, Plaintiffs have exhausted, or should be deemed to have exhausted, their administrative remedies under applicable federal and state laws.

### JURISDICTION, VENUE AND JOINDER

7.     This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The Court has federal question jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1131 and 1343.

8.     Venue is proper in the Northern District of Mississippi under 28 U.S.C. § 1391, as a substantial portion of the events giving rise to the claims in this Complaint occurred in this District.

9.     Joinder of the Plaintiffs listed herein is proper pursuant to Fed. R. Civ. P. 20. Plaintiffs: (a) assert rights to relief jointly that arise out of the same transactions, occurrences, or series of transactions or occurrences. Additionally, questions of both law and fact common to all parties will arise in this action, such that the claims at issue share an aggregate of operative facts. However, the joinder of Plaintiffs in this action does not in any way diminish their request for class certification, as the potential class members include all of the approximately 1,900 inmates currently incarcerated at Parchman, as well as those inmates who will be incarcerated at Parchman in the future. Due to the number of potential class members, joinder of all potential class members as individual plaintiffs is impracticable.

## PARTIES

### PLAINTIFFS[1]

10.     MICHAEL AMOS, MDOC# 217140, East Mississippi Correctional Facility, Meridian, Mississippi.[2]

11.     DARRAN LANG, MDOC# 196614, George County Correctional Facility, Lucedale, Mississippi.[3]

12.     PITRELL BRISTER, MDOC# 208459, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.[4]

---

[1] The residence of each Plaintiff is listed herein based on their own information and belief, and information provided by MDOC, as of December 15, 2021. Hereinafter, the term "Plaintiffs" will describe some or all of the individual Plaintiffs in this action, as well as, in certain circumstances, additional putative class members.

[2] Plaintiff was housed at the Mississippi State Penitentiary and one of the 33 plaintiffs named in the complaint in *Amos v. Cain*, 4:20-cv-0007-DMB-JMV (hereinafter "*Amos*"). He may be transferred back to Parchman at any time during this action.

[3] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in *Lang v. Cain*, 4:20-CV-00030-DMB-RP (hereinafter "Lang") and the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[4] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.

5

13.     CALEB BUCKNER, MDOC# 204595, East Mississippi Correctional Facility, Meridian, Mississippi.[5]

14.     WILLIE FRIEND, MDOC# K4717, Wilkinson County Correctional Facility, Woodville, Mississippi.[6]

15.     DANIEL GUTHRIE, MDOC# 105808, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi[7]

16.     WILLIAM GREEN, MDOC# 140885, Bolivar County Correctional Facility, Cleveland, Mississippi.[8]

17.     JUSTIN JAMES, MDOC# 162538, Wilkinson County Correctional Facility, Woodville, Mississippi.[9]

18.     ARIC JOHNSON, MDOC# 101119, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi[10]

19.     TERRENCE MCKINNEY, MDOC# 130596, Central Mississippi County Jail, Mississippi.[11]

20.     IVERY MOORE, MDOC# 176984, Wilkinson County Correctional Facility, Woodville, Mississippi.[12]

---

[5] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[6] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[7] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.
[8] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[9] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[10] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.
[11] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[12] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.

6

21.     KURIAKI RILEY, MDOC# 110851, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi[13]

22.     DERRICK ROGERS, MDOC# 160736, Alcorn County Correctional Facility, Corinth, Mississippi.[14]

23.     TYREE ROSS, MDOC# K9384, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi[15]

24.     H.D. ALEXANDER SCOTT, MDOC# 117837, Holmes County Correctional Facility, Lexington, Mississippi.[16]

25.     DEANGELO TAYLOR, MDOC# 184836, Central Mississippi Correctional Facility, Pearl, Mississippi.[17]

26.     LEMARTINE TAYLOR, MDOC# 124724, Yazoo County Correctional Facility, Yazoo, Mississippi.[18]

27.     CONTI TILLIS, MDOC# 157731, Yazoo County Correctional Facility, Yazoo, Mississippi.[19]

28.     DEMARCUS TIMMONS, MDOC# 184112, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi[20]

---

[13] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.
[14] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint. He may be transferred back to Parchman at any time during this action.
[15] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.
[16] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint. He may be transferred back to Parchman at any time during this action.
[17] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint. He may be transferred back to Parchman at any time during this action.
[18] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint. He may be transferred back to Parchman at any time during this action.
[19] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint. He may be transferred back to Parchman at any time during this action.
[20] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.

29.    CARLOS VARNADO, MDOC# 158780, Jefferson County Correctional Facility, Fayette, Mississippi.[21]

30.    PHILLIP DECARLOS WEBSTER, MDOC# 157916, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi[22]

31.    ADRIAN WILLARD, MDOC# 119350, South Mississippi Correctional Institute, Leakesville, Mississippi.[23]

32.    CURTIS WILSON, MDOC# 216587, Issaquena County Correctional Facility, Mayorsville, Mississippi.[24]

33.    WILLIE J. ALLEN, MDOC# 39219, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

34.    RANDY ANDERSON, MDOC# R0734, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

35.    CEDRIC ANDREWS, MDOC# 66995, Southern Mississippi Correctional Institution, Leakesville, Mississippi.[25]

36.    LARRY BARDNEY, MDOC# 27397, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

37.    KEITH BASKIN, MDOC#  33761, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

---

[21] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[22] Plaintiff was one of the original 33 plaintiffs named in the *Amos* Complaint.
[23] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[24] Plaintiff was housed at the Mississippi State Penitentiary and one of the original 33 plaintiffs named in the *Amos* Complaint.  He may be transferred back to Parchman at any time during this action.
[25] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in *Lang* on July 9, 2020 and may be transferred back at any time during this action.

38.    JERRY BLAND, MDOC# 43489, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

39.    JOSHUA BOGAN, MDOC# 223071, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

40.    ROGER BOYD, MDOC# 179103, Holmes County Correctional Facility, Lexington, Mississippi.[26]

41.    MONDRICK BRADLEY, MDOC# 46406, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

42.    WILLIAM BRANCH, MDOC# 156616, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

43.    DWAYNE BRIDGET, MDOC# 167410, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

44.    NICHOLAS BROOKS, MDOC# 124006, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

45.    ERIC BROWN, MDOC# K0577, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

46.    FREDERICK BROWN, MDOC# 13134, Leake County Correctional Facility, Carthage, Mississippi.[27]

47.    ROMAIRE JAMES EARL BROWN, MDOC# 193776, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

---

[26] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[27] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

48.     TRAVIS CARDELL BROWN, MDOC# 103148, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

49.     EMMIT BUCHANAN, MDOC# 81955, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

50.     DILLON CALLAWAY, MDOC# 166649, East Mississippi Correctional Facility, Meridian, Mississippi.[28]

51.     LEBARRON CHATMAN, MDOC# 105464, South Mississippi Correctional Institution, Leakesville, Mississippi.[29]

52.     JOHNATHAN CLARK, MDOC# 174372, South Mississippi Correctional Institution, Leakesville, Mississippi.[30]

53.     JERRY CALVIN COLLIER, MDOC# 208849, Unit 31, Mississippi State Penitentiary, Parchman, Mississippi.

54.     JOHNNY COLTON, MDOC# 71909, Marion County Correctional Facility, Columbia, Mississippi.[31]

55.     JAMES COX, MDOC# 149772, South Mississippi Correctional Institution, Leakesville, Mississippi.[32]

---

[28] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[29] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[30] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[31] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[32] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

56.     CHARLES CROSS, MDOC# 193978, Winston County Correctional Facility, Louisville, Mississippi.[33]

57.     VINCENT CURLEE, MDOC# 41103, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.[34]

58.     RICKY DARDEN, MDOC# 139199, Wilkinson County Correctional Facility, Woodville, Mississippi.[35]

59.     JOHN DAVIS, MDOC# 29794, Leake County Correctional Facility, Carthage, Mississippi.[36]

60.     ANTHONY DAY, MDOC# 143703, Wilkinson County Correctional Facility, Woodville, Mississippi.[37]

61.     JOSEPH DENNIS, MDOC# 209939, South MS County Jail, Mississippi.[38]

62.     MICHAEL A. DILLARD, MDOC# 21421, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

63.     TRENT M. DORA, MDOC# 84204, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

---

[33] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[34] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020, was transferred and housed at Central Mississippi Correctional Facility in July 2020, and most recently has been transferred back to Parchman.

[35] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[36] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[37] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[38] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

64.     WENDELL   DUNCAN,   MDOC#   32726,   South   Mississippi   Correctional Institution, Leakesville, Mississippi.[39]

65.     JAMIE ELAIRE, MDOC# 200674,   Wilkinson   County   Correctional   Facility, Woodville, Mississippi.[40]

66.     PAUL EVANS, JR., MDOC# K9280, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

67.     NIGEL FARMER, MDOC#   208377,   Issaquena County   Correctional   Facility, Mayorsville, Mississippi.[41]

68.     ANTRON   FINKLEA,   MDOC#   146608,   Bolivar County Correctional Facility, Cleveland, Mississippi.[42]

69.     TROY   JAMES   FORD,   MDOC#   142889,   South   Mississippi   Earned   Release Supervision.[43]

70.     MICHAEL   FREEMAN,   MDOC#   39107,   Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

71.     RICKY   FRIERSON,   MDOC#   55436,   South   Mississippi   Correctional   Institution, Leakesville, Mississippi.[44]

---

[39] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[40] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[41] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[42] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[43] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[44] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

72.     TERRENCE GATLIN, MDOC# 185375, South Mississippi Correctional Institution, Leakesville, Mississippi.[45]

73.     RICKY JOSEPH GAVIN, MDOC# 153557, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

74.     RANDIE GAYDEN, MDOC# 142937, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

75.     THOMAS GERMAN, MDOC# 127404, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

76.     BRANDON GILMORE, MDOC# L0427, East Mississippi Correctional Facility, Meridian, Mississippi.[46]

77.     WILLIAM GOLDEN, JR., MDOC# K3957, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

78.     ANDREW GOOD, MDOC# 191365, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

79.     TYLER GRAHAM, MDOC# 111109, South Mississippi Correctional Institution, Leakesville, Mississippi.[47]

80.     JABRANDON GREEN, MDOC# 194412, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

81.     DEWAUN GRIFFIN, MDOC# 132751, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

---

[45] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[46] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[47] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

82.     DANTAVIOUS HAIRSTON , MDOC# 219206, East Mississippi Correctional Facility, Meridian, Mississippi.[48]

83.     BRYMON HAMP, MDOC# 105415, South Mississippi Correctional Institution, Leakesville, Mississippi.[49]

84.     CHARLIE HARRIS, MDOC# K5661, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

85.     JONATHAN HERRINGTON, MDOC# 196413, Yazoo Regional Correctional Facility, Yazoo City, Mississippi.[50]

86.     WILSON HERVEY, MDOC# M4911, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

87.     GREGORY HICKS, MDOC# 78313, South Mississippi Correctional Institution, Leakesville, Mississippi.[51]

88.     JANARIAN HILL, MDOC# 149694, South Mississippi Correctional Institution, Leakesville, Mississippi.[52]

89.     JOSEPH HOLIDAY, MDOC# R1642, Jefferson/Franklin County Correctional Facility, Fayette, Mississippi.[53]

---

[48] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[49] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[50] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[51] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[52] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[53] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

90.   QUINCY HOLMES, MDOC# 187729, Marion/Walthall County Correctional Facility, Columbia, Mississippi.[54]

91.   ANTONIO HOOVER, MDOC# 119033, East Mississippi Correctional Facility, Meridian, Mississippi.[55]

92.   FRANK JACKSON, MDOC# 30892, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

93.   NATHANIEL JACKSON, MDOC#   108462, Alcorn County Regional Correctional Facility, Corinth, Mississippi.[56]

94.   WILLIAM JACKSON, MDOC# 43577, Marion/Walthall County Correctional Facility, Columbia, Mississippi. – not found in 7/20 filing

95.   MICHAEL JAMISON, MDOC# R3941, North Mississippi Medical Release, Bolivar, Mississippi.[57]

96.   CHARLES LAMAR JOHNSON, MDOC#  K1624, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

97.   QUINCY JOHNSON , MDOC# L6175, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

98.   SAMMIE JOHNSON, MDOC# 58463, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

---

[54] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[55] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[56] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[57] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

99.     SELLERS JOHNSON, MDOC# 206592, East Mississippi Correctional Facility, Meridian, Mississippi.[58]

100.     XAVIER JOHNSON, MDOC# 169642, East Mississippi Correctional Facility, Meridian, Mississippi.[59]

101.     ALEXANDER JONES, MDOC# 80653, Central Mississippi Correctional Facility, Pearl, Mississippi.[60]

102.     WILLIAM RAY JONES, MDOC# 109325, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

103.     JUAREZ KEYES, MDOC# 64590, South Mississippi Correctional Institution, Leakesville, Mississippi.[61]

104.     TONY KEYES, MDOC# 119376, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

105.     JONATHAN KEY-IVY, MDOC# 103620, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

106.     TOMMY KIMBLE, MDOC# 72981, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

107.     CORDERRIUS KING, MDOC# 129733, Wilkinson County Correctional Facility, Woodville, Mississippi.[62]

---

[58] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[59] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[60] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[61] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[62] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

108.   ANTONIO KNOWLES, MDOC#   124171,   Unit   30,   Mississippi   State
Penitentiary, Parchman, Mississippi.

109.   MALCOM LATHAN ,   MDOC#   R8979,   Chickasaw   County   Regional
Correctional Facility, Houston, Mississippi.[63]

110.   TONY RAY LEAKS, MDOC# 67217, Unit 29, Mississippi State Penitentiary,
Parchman, Mississippi.

111.   JUSTIN LEASE, MDOC# 138138, South Mississippi Correctional Institution,
Leakesville, Mississippi.[64]

112.   BILLY LEE, MDOC# 93158, Unit Z, Mississippi Department of Corrections.
Lee was housed in Unit 29 at the Mississippi State Penitentiary, Parchman, Mississippi.[65] His
current location is listed as Unit Z, which upon information and belief stands for an "outside
hospital."   To return to an MDOC facility, Lee will first be transported to Unit 42, the hospital
unit at Parchman.

113.   LEGRANE LENOX  , MDOC# R0782, Wilkinson County Correctional Facility,
Woodville, Mississippi.[66]

114.   JAMES LEWIS, MDOC# R9983, Unit 30, Mississippi State Penitentiary,
Parchman, Mississippi.

---

[63] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[64] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[65] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[66] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

115.     ALVIN LUCKETT, MDOC#  44018, South Mississippi Correctional Institution, Leakesville, Mississippi.[67]

116.     STANLEY LUSTER, MDOC# 18531, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

117.     TED MANGUM, MDOC# R3209, South Mississippi Correctional Institution, Leakesville, Mississippi.[68]

118.     CHAD MARSHALL, MDOC# 175674, Central Mississippi Earned Release Supervision.[69]

119.     KENYATTA MCGEE, MDOC# 190909, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

120.     JERRY METTETAL, MDOC# 71745, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

121.     CHARLES MILES, MDOC# 63813, Wilkinson County Correctional Facility, Woodville, Mississippi.[70]

122.     ERIS MOORE, MDOC# 159018, Central Mississippi Correctional Facility, Pearl, Mississippi.[71]

123.     JERMAINE MOORE , MDOC# 82002, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

---

[67] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[68] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[69] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[70] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[71] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

124.    KERRY MORGAN, MDOC# 15117, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

125.    BENNIE MOTTEN, MDOC# 196019, Winston/Choctaw County Correctional Facility, Louisville, Mississippi.[72]

126.    BRIAN NETTLES, MDOC# 123922, Stone County Correctional Facility, Wiggins, Mississippi.[73]

127.    EDUARDO NICHOLS, MDOC# 117002, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

128.    MICHAEL OLIVER, MDOC# 197427, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

129.    ISRAEL PAGE, MDOC# 59118, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

130.    IRVIN ANDREW PAYNE, MDOC# 169701, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

131.    MARSHALL PHILLIPS, MDOC# 57222, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

132.    XAVIER PHILLIPS-BOWMAN, MDOC# 189860, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

133.    TERRY PIERCE, MDOC# 155018, South Mississippi Correctional Institute, Leakesville, Mississippi.[74]

---

[72] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[73] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[74] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

134.    GAVIN PIERSON, MDOC#  141688, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

135.    CASIMIR POE, MDOC#   216726, Wilkinson County Correctional Facility, Woodville, Mississippi.[75]

136.    RANDY POGMORE , MDOC# 185457, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

137.    WILFRED POWELL , MDOC# 68072, Marion/Walthall County Correctional Facility, Columbia, Mississippi.[76]

138.    MAURICE PUGH, MDOC# 52020, Unit  28,  Mississippi State  Penitentiary, Parchman, Mississippi.

139.    MARIO RAGLAND, MDOC# 204671, East Mississippi Correctional Facility, Meridian, Mississippi.[77]

140.    JOSEPH LEE REESE, MDOC# 163663, Alcorn County Correctional Facility, Corinth, Mississippi.[78]

141.    FRANK RICE , MDOC# 93465, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

142.    JERRY RICE, MDOC# 80626, Wilkinson County Correctional Facility, Woodville, Mississippi.[79]

---

[75] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[76] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[77] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[78] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[79] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

143.    EMANUEL RICHARDSON , MDOC# 181084, East Mississippi Correctional Facility, Meridian, Mississippi.[80]

144.    TYREDIUS ROBERTS, MDOC# 217277, Carroll/Montgomery County Regional Correctional Facility, Vaiden, Mississippi.

145.    MONTRAIL ROBINSON, MDOC# L3977 , Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

146.    RONALDO ROGERS, MDOC#    142643, North Mississippi County Jail, Corinth, Mississippi.[81]

147.    LEON RUFFIN, JR., MDOC# 150042, Bolivar County Correctional Facility, Cleveland, Mississippi.[82]

148.    MICAH RUFFIN, MDOC#  128797, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

149.    CEDRIC RUSSELL, MDOC# 145868, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

150.    DOMINICO SADDLER, MDOC#    108457, Winston/Choctaw County Correctional Facility, Louisville, Mississippi.[83]

151.    LAVARO SADDLER, MDOC# 107975, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

---

[80] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[81] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[82] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[83] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

152. DARYL SHINN, MDOC# 170123, Carroll/Montgomery County Regional Correctional Facility, Vaiden, Mississippi.[84]

153. LONNIE SIMS, MDOC# 140701, East Mississippi Correctional Facility, Meridian, Mississippi.[85]

154. HERMAN SIPP, JR., MDOC# 78783, Wilkinson County Correctional Facility, Woodville, Mississippi.[86]

155. JODON SLAUGHTER, MDOC# K1780, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

156. TYLER SMITH, MDOC# 155793, East Mississippi Correctional Facility, Meridian, Mississippi.[87]

157. SEAN SPOTTS, MDOC# R2721, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

158. LYNN SPURLOCK, MDOC# 107326, Central Mississippi Correctional Facility, Pearl, Mississippi.[88]

159. JOSEPH STACK, MDOC# K7247, Unit 26, Mississippi State Penitentiary, Parchman, Mississippi.

---

[84] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[85] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[86] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[87] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[88] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

160.   JOSEPH STANFORD, MDOC# 184812, North Mississippi Earned Release Supervision.[89]

161.   KEDRIC STEELE, MDOC# 144935, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

162.   REMINGTON STEELE, MDOC# 106989, East Mississippi Correctional Facility, Meridian, Mississippi.[90]

163.   KEITH MICHAEL STEINMETZ, MDOC# 121529, Wilkinson County Correctional Facility, Woodville, Mississippi.[91]

164.   DARWIN STRAHAN, MDOC# 13272, East Mississippi Correctional Facility, Meridian, Mississippi.[92]

165.   DEMARQUIS TATE, MDOC# 136469, Bolivar County Correctional Facility, Cleveland, Mississippi.[93]

166.   CHRISTOPHER THOMAS, MDOC# 138935, Wilkinson County Correctional Facility, Woodville, Mississippi.[94]

167.   ERIC THOMAS, MDOC# K8247, Central Mississippi Correctional Facility, Pearl, Mississippi.[95]

---

[89] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[90] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[91] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[92] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[93] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[94] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[95] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

168.    RAYMOND KEITH THOMAS, MDOC#    T0509,        South    Mississippi Correctional Institution, Leakesville, Mississippi.[96]

169.    PAUL THOMPSON, MDOC# 190610, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

170.    AIRICK TOINS, MDOC# 200087, Marshall County Correctional Facility, Holly Springs, Mississippi.[97]

171.    QY'DARRIOUS TOWNS, MDOC#    217182,    Carroll/Montgomery    County Regional Correctional Facility, Vaiden, Mississippi.[98]

172.    SERGE TRULLET, MDOC#  176507, Unit 30, Mississippi State Penitentiary, Parchman, Mississippi.

173.    CARLOS TWILLIE, MDOC# 57595, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

174.    NETORRIUM TYSON, MDOC# 200796, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

175.    JERRY VANWAGNER, MDOC# 161751, Unit 28, Mississippi State Penitentiary, Parchman, Mississippi.

176.    LINNOX WALKER, MDOC# R0809, Wilkinson County Correctional Facility, Woodville, Mississippi.[99]

---

[96] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[97] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[98] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[99] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

177.    JOHNNY WALLACE, MDOC# K6398, Jefferson/Franklin County Correctional Facility, Fayette, Mississippi.[100]

178.    ERIC WAYNE WATKINS, MDOC# 35738, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

179.    MACK WATTS, MDOC# 163550, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

180.    COREY JAMES WELLS, MDOC# 140752, South Mississippi Correctional Institution, Leakesville, Mississippi.[101]

181.    JOSEPH WESTBROOK, MDOC# 78656, Unit 25, Mississippi State Penitentiary, Parchman, Mississippi.

182.    EFREM WHITFIELD, MDOC# 112686, East Mississippi Correctional Facility, Meridian, Mississippi.[102]

183.    BERNARD WIGLEY, MDOC# 94312, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.

184.    DANIEL WILLIAMS, MDOC# 197451, Marshall County Correctional Facility, Holly Springs, Mississippi.[103]

185.    MARIO WILLIAMS, MDOC# 161200, Carroll/Montgomery County Regional Correctional Facility, Vaiden, Mississippi.[104]

---

[100] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[101] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[102] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

[103] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.

[104] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.

186.    RICHARD J. WILSON, MDOC# 217821, Unit 29, Mississippi State Penitentiary, Parchman, Mississippi.[105]

187.    JOE WOMACK, MDOC# 59318, Holmes/Humphreys County Correctional Facility, Lexington, Mississippi.[106]

188.    DOMINIC YOUNG, MDOC# T1746, Issaquena County Correctional Facility, Mayersville, Mississippi.[107]

DEFENDANTS

189.    Defendant NATHAN "BURL" CAIN is the Commissioner of the Mississippi Department of Corrections ("MDOC").[108] In this capacity, Cain is responsible for overseeing all aspects of Mississippi's correctional system and ensuring that all prisons under the jurisdiction of MDOC, including Parchman, operate in compliance with state and federal law. This includes, without limitation, all administrative, fiscal, and policymaking duties within MDOC and at Parchman. More specifically, but without limitation, Cain is responsible for: "[e]stablish[ing] the general policy of the Department" (§47-5-20); "implement[ing] and administer[ing] laws and policy related to corrections" (§47-5-28(a)); and "establish[ing] standards. . . and exercise[ing] the requisite supervision as it relates to correctional programs over all state-supported adult correctional facilities" (§47-5-28(b)). Cain is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

---

[105] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020, was transferred and housed at Tallahatchie in July 2020, and most recently has been transferred back to Parchman.
[106] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the original Complaint in Lang on February 25, 2020 and may be transferred back at any time during this action.
[107] Plaintiff was housed at the Mississippi State Penitentiary at the filing of the Amended Complaint in Lang on July 9, 2020 and may be transferred back at any time during this action.
[108] By statute, MDOC is "vested with the exclusive responsibility for management and control of the correctional system, and all properties belonging thereto" and "shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein." Miss. Code Ann. § 47-5-23.

190.     Defendant JEWORSKI MALLETT is the Deputy Commissioner for Institutions at the MDOC. Mallett is responsible, together with the Commissioner, for the daily functioning and administration of all MDOC institutions, including Parchman. Mallett has had for many years, and now has, direct knowledge of the conditions at Parchman, but Mallett has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Mallett is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

191.     Defendant TIMOTHY MORRIS is the Acting Superintendent of the Mississippi State Penitentiary at Parchman, Mississippi. Morris is responsible for the care, custody and protection of individuals incarcerated at Parchman, including Plaintiffs, and manages the day-to-day operations at Parchman. Morris has had for many years, and now has, direct knowledge of the conditions at Parchman, but Morris has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Morris is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

192.     Defendant DONALD FAUCETT is the Chief Medical Officer for the MDOC and leads its Office of Medical Compliance. He is the most senior medical official within the MDOC and reports directly to the Commissioner. In his capacity as Chief Medical Officer, Faucett is responsible for approving all MDOC policies related to healthcare, overseeing all specialty care provided to prisoners in MDOC custody, investigating and responding to complaints of inadequate care, and reviewing summaries of prisoner deaths while in custody. Importantly, Faucett also is responsible for oversight of MDOC's third-party healthcare provider – currently VitalCore Health Strategies and previously, through certain relevant time periods, Centurion, to ensure their compliance with their contractual and other obligations at Parchman, as well as other

27

MDOC facilities. Based on information and belief, Faucett has, and has had, direct knowledge of MDOC's systemic failure to provide health care to inmates at Parchman. Yet, Faucett has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Faucett is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

193.    Defendant LEE SIMON is a Warden at Parchman. Defendant Simon has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant Simon is sued in his official capacity. At all times relevant hereto, he has acted under color of state law.

194.    Defendant TRACY MCDONALD is a Warden at Parchman. Defendant McDonald has direct knowledge of the conditions at Parchman, as described herein, but has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant McDonald is sued in their official capacity. At all times relevant hereto, they has acted under color of state law.

195.    Defendant SONJA STANCIEL is the Chief of Staff at Parchman. Defendant Stanciel has, and has had for many years, direct knowledge of the conditions at Parchman, as described herein, but she has failed to take reasonable measures to remedy these conditions and abate the substantial risks of serious harm to inmates, including Plaintiffs. Defendant Stanciel is sued in her official capacity. At all times relevant hereto, she has acted under color of state law.

196.    JOHN AND JANE DOE DEFENDANTS are individual defendants who, acting in their official capacity and under color of state law, are responsible, in whole or in part, for conditions at Parchman set forth in this Complaint, but who presently are unknown despite

diligent efforts to discover their identity. Plaintiffs expressly reserve the right to substitute persons as Defendants in place of John and Jane Doe Defendants, once their identity and role in this matter is discovered.

197.    XYZ CORPORATIONS are entities, acting under color of state law, with responsibility, in whole or in part, for conditions at Parchman set forth in this Complaint, but which presently are unknown to Plaintiffs despite diligent efforts to discover their identity. Plaintiffs expressly reserve the right to substitute entities as Defendants in place of XYZ Corporations, once their identity and role in this matter is discovered.

## FACTS

198.    Pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), Plaintiffs bring this action on behalf of themselves and a class of all persons who are currently, or will be, confined at Parchman.  The legal requirements of numerosity, commonality, typicality, and adequacy of representation have been met with respect to the class as well as those putative sub-classes set forth herein.

### DANGEROUSLY DEFICIENT STAFFING

199.    Parchman suffers from chronic staff shortages, staff incompetency, and staff corruption that place Plaintiffs and other inmates in constant peril. Stated simply, there are not enough guards at Parchman, so the few guards available avoid interaction with the inmates at all costs. In many instances, there is one – often female – guard for every 160 inmates. As a result, prisoner-on-prisoner violence is rampant, and, at times, is facilitated by corrupt guards seeking to curry favor with inmates. Plaintiffs have witnessed instances where guards have provided cell keys to inmates so they could assault, and sometimes kill, other inmates. Guards attempting to do their jobs adequately are forced to maintain order despite the 160-to-1 ratio of prisoners to

guards. Their solution is simply to avoid the housing areas, and the dangers therein, thus leaving the inmates to govern themselves or, worse yet, locked in their cells in perpetual forced isolation. This cycle persists indefinitely, with some Plaintiffs being held inside, without exposure to fresh air, sunlight, or exercise, for years.

200.     In 2019, MDOC issued a press release stating that it needed "help to address staffing." MDOC called the "staffing crisis" a "public safety" concern and admitted the situation at Parchman was a "pressure cooker." Six months later, in December 2019, riots broke out at Parchman in response to abhorrent conditions, lack of basic human needs, and systemic neglect. The violence ushered in the New Year and an unprecedented wave of inmate deaths at Parchman. Yet, as "unprecedented" as it may be, the deadly result of conditions at Parchman should not come as a surprise to Defendants.

201.     Similar to the findings in the U.S. Department of Justice report concerning Alabama's Department of Corrections, the staffing deficiencies at Parchman are  "egregious" with "inadequate supervision that results in a substantial risk of serious harm." The takeaway from the DOJ report concerning Alabama is simple: staffing shortages result in violence. This sad fact plays out daily at Parchman. After a stabbing in January 2020, the guard, who also witnessed the assault, simply turned away. That same month, a guard abandoned the tower in one of the housing units, which left the zone unattended while one inmate stabbed another. One Plaintiff was stabbed multiple times in front of a guard and left lying in his cell without medical attention. After yet another stabbing, a guard supervisor peered through the glass to determine the extent of the inmate's injuries but would not enter the housing zone itself and would not call for help. The inmate died. In yet another incident, a guard watched inmates beat four other inmates – Timmy Hudspeth, James Tally, "Lewis," and Chris "Flip" – for over three hours.

Hudspeth and Tally died. The guard on duty, who had watched the beatings, had to be alerted that one of the inmates had died. A sign was held up stating, "inmate on bed 135 is dead." The guard simply shook his head and said, "I'm not calling anyone." Unfortunately, the guards are not merely inept, but at times they play an active role in the violence. As a result, Plaintiffs have resorted to tying their cell doors closed at night to prevent guards from allowing other inmates to enter and assault them. In sum, Parchman's atmosphere of violence, and the constant fear it produces, is so pervasive that it touches every Plaintiff psychologically, many Plaintiffs physically, and results in a toxic environment that poisons every aspect of inmate life.

202.    The dangerously unsafe conditions existing at Parchman have already caused physical injury to many plaintiffs. For example:

  a.  Rodger Boyd, MDOC# 179103, was assaulted on or about August 27, 2017, and left with a punctured lung;

  b.  Dillon Callaway, MDOC# 166649, tore the 'A' ligament in his right knee when he slipped in the water flooding his cell;

  c.  Anthony Day, MDOC# 143703, was stabbed and had his tooth knocked out during a 2019 assault;

  d.  Ricky Frierson, MDOC# 55436, was left with broken ribs after guards beat him and stabbed him with pens;

  e.  Carlos Henderson, MDOC# L4502, was left with broken ribs after an assault;

  f.  Jonathan Herrington, MDOC# 196413, has been stabbed so severely that he nearly lost his arm, beaten with locks, scalded with hot water, and now has vision problems as a result of being subjected to complete darkness for extended periods of time, and difficulty breathing due to prolonged exposure to black mold and mildew;

g.  Janarian Hill, MDOC# 149694, was assaulted and left with an injury to his head, bruises all over his body, and two black eyes;

h.  Antonio Hoover, MDOC# 119033, was left with a broken nose after an assault;

i.  Alvin Luckett, MDOC# 44018, has insomnia due to harassment by guards;

j.  Jermaine Moore, MDOC# 82002, in addition to suffering from an untreated infection in his leg, has been repeatedly flipped out of his wheelchair by guards;

k.  Brian Nettles, MDOC# 123922, was cuffed to a chair by two officers and beaten by other inmates, leaving him with broken ribs and no medical attention;

l.  Israel Page, MDOC# 59118, suffered an injury to his shoulder during an assault by an officer;

m.  Marshall Phillips, MDOC# 57222, has suffered from smoke inhalation due to fires being set on the zone;

n.  Gavin Pierson, MDOC# 141688, was shot in the shoulder with a pellet gun;

o.  Wilfred Powell, MDOC# 68072, was stabbed 19 times and left with severe shoulder and back pain and numbness;

p.  Dominic Saddler, MDOC# 108457, had his face and legs smashed and teeth kicked out during assault by state troopers and received no medical care for more than seven days;

q.  Joseph Stanford, MDOC# 184812, was attacked by an officer, requested medical attention but never received help; and

r.  Kedric Steele, MDOC# 144935, was left with cracked ribs and pins in his legs, hands, and face after suffering a beating at the hands of his guards.

.

### LIVING CONDITIONS NOT SUITABLE FOR ANIMALS

203.    While the violence at Parchman is abhorrent, words cannot adequately describe the degree of filth and dilapidation the men at Parchman live and lie in, every day. Were these conditions in existence at an animal shelter, media would swarm, arrests would be made, and those in charge would be on their way to jail as a result of public outrage over this criminal conduct.

204.    In June 2019, former MDOC Commissioner Pelicia Hall issued a report concerning Parchman. The report admitted that "more than 400 cells" had "problems such as flooding and leaks, lack of lights, power and water, broken toilets and sinks, broken windows and bird nests, as well as missing pillows and mattresses." The report documented flies and mold in food containers, improper food storage, exposed wiring, and mildew, along with hundreds of other environmental deficiencies. MDOC concluded that certain housing units were "unsafe for staff and inmates because of age and general deterioration." While accurate, the MDOC inspection report does not do the wretched conditions justice.

205.    The known conditions are the tip of the iceberg as there are gaps in State reporting evinced by the limited water quality testing and reporting done by the Mississippi Department of Environmental Quality, leaving the true conditions unknown. And when reporting is done, the results are still disappointing, as shown by the Mississippi Department of Health's June 2021 Health and Sanitation Inspection Report, there are still many issues to be corrected.

206.    The conditions inside Parchman are medieval. The light fixtures in many housing units are missing or hanging from ceilings with twisted metal edges and exposed wires. There are holes in nearly every wall including many where light switches used to be. Many of the cells have no electricity, so they stay dark and wet continuously. In many units, inmates have erected

makeshift electrical grids with exposed electrical wires running across the units, some hanging low enough to touch and others snaking through puddles of water and into individual cells. Many of these makeshift extension cords are homemade with shards of razor blades and electrical tape fashioned into plugs.

207. The plumbing, sewer, and water systems at Parchman are in a perpetual state of systemic failure. The toilets routinely back up and flood the prison cells, which allows fecal matter, urine and water to cover the floors and drain out into the housing unit's common space. Inmates use rags made from their clothing, towels and linens to clean up sewage by pushing the feces out of their cells and into the walkways. Cardboard boxes have been torn and cut to erect makeshift barriers in the bars of the cells to deter rats from entering the cells in search of food. Plaintiffs endure sleepless nights in fear of packs of rats descending on them in their bunks. There can be no doubt these conditions take their toll both physically and psychologically, as the relentless cacophony created by the cries of human suffering and violence pervade each inmate's experience at Parchman.

208. The potable water system at Parchman is contaminated with human feces, presumably from the sewer system, has failed to meet safety standards, and has been cited for violation of the Federal Clean Water Act. The sinks, showers, and toilets often run constantly or not at all. Plaintiffs at times go for months without showers. However, there seems to be no shortage of water flowing through the decrepit roofs and into the cells, and bunks, of Plaintiffs. Not surprisingly, the persistently wet conditions have resulted in dangerous black mold, and mildew, not to mention the dehumanizing effect on inmates living perpetually isolated in cold, dark, damp cells. These conditions are alleviated only as summer approaches when they are exchanged for boiling hot temperatures and stifling humidity. Plaintiffs suffer from one extreme

to the other as Parchman lacks heat in the winter and air conditioning in the sweltering Mississippi summers.

209.    Defendants are plainly aware of the abhorrent conditions and have admitted that vast improvements must be made. This admission only came months after Governor Tate Reeves spoke out regarding Unit 29, condemning the treacherous, medieval conditions and calling for its closure. Yet, even now, Unit 29 is still open and was even inexplicably used as a "quarantine and isolation" area for COVID-19.

210.    Despite actual knowledge of the foregoing and promises of improvements, Defendants' feckless response to the inhuman conditions at Parchman so far has been to throw a coat of paint on it.

**CONTAMINATED FOOD AND POOR NUTRITION**

211.    The kitchen facilities and food service at Parchman are nauseating. Annual inspection reports by the Mississippi Health Department lambast the conditions, finding containers of dried, spoiled and molded food, flies and other pests in the kitchen, food maintained in coolers at unsafe temperatures, collapsing ceilings, and other unhealthy food preparation and storage conditions. The inmates receive meals that are undercooked and served at unsafe temperatures. Many times, the food is adulterated with rat feces, cockroaches, rocks, bird droppings, and other foreign matter.  Routinely, Plaintiffs suffer rapid unintended weight loss resulting in significant physical injury.

212.    Perhaps more disconcerting, meals at Parchman are not guaranteed. Administrative dysfunction renders an accurate count of inmates impossible, which in turn results in too few meals being prepared. The meals that are prepared are served late, or not at all, and at times are withheld as a disciplinary measure. Staffing shortages require the meals to be

driven to certain units and left outside for inmates, not guards or staff, to serve. Since guards are unwilling to enter the zones themselves, inmates called "floor walkers" deliver the meals, but they often steal food or refuse to serve certain inmates. These conditions deny inmates, including Plaintiffs, Constitutional guarantees to adequate nutrition.

213.    Even if or when meals at Parchman are distributed, many inmates refuse to consume the food for the reasons listed above, leaving them to either spend copious amounts of money on canteen services to survive or be malnourished, or both. Plaintiffs experience high blood pressure as a result from eating large portions of processed foods.

214.    Indeed, the problems with food preparation, maintenance, and delivery at Parchman are systemic.  While vendors change, the personnel and standard operating practices do not, leaving men hungry, competing for food and resources, and unable to obtain even the most basic of nutritional needs.

POOR HEALTH CARE AND NO MENTAL HEALTH CARE

215.    Among the litany of abhorrent conditions at Parchman, perhaps the most surprising is the health care system. Defendants have presided over a healthcare system that costs tens of millions of dollars annually, but callously ignores human suffering, is rife with incompetence, and fails to provide consistently even the most basic healthcare to Plaintiffs. Although the State of Mississippi paid its medical providers tens of millions of dollars annually, Plaintiffs and other inmates routinely are denied adequate health care through a bureaucratic system fraught with corruption and incompetence. For instance, inmates must fill out a "sick call" request form in order to see a nurse. Forms often are not available to inmates. If the inmate can get a copy of the form and complete it, he then must get a guard, a nurse who happens to pass by his cell occasionally, or a floorwalker to collect the form and deposit it in the proper

36

location. If this occurs, then there often is a weeks-long delay before any response is received. If a medical clinic visit is finally approved, the inmate must hope for a guard to be available on the day of the appointment to transport him to sick call. If a guard is not available, or is unwilling, then the inmate is simply marked by the medical personnel as "refused care." Plaintiffs who are eventually transported to sick call are often subjected to a system of graft that requires payment of a bribe to the guard for transportation to the medical clinic. The going rate is $40 per visit, which is far more than the average insurance copay.

216.    If an inmate successfully navigates Parchman's maze of corruption and incompetence and is lucky enough to actually see a medical provider, the care is wholly inadequate. Office visits are often noted in the record upon arrival as having occurred, and then the inmate immediately is transported back to his cell without ever being examined. If there is an examination, it is often made in the common area without privacy, or in a case manager's office, rather than in an examination room. Inmates who are diagnosed with a condition seldom receive follow-up care and at times no follow-up medication, often resulting in physical injury to the inmate. Rapid, unintentional weight loss is not recorded or investigated; elevated blood pressure is not monitored; and medical records are not sufficiently maintained. Many inmates, including Plaintiffs, are in dire need of medical care for cancer, lupus, serious heart defects, Rheumatoid Arthritis, deteriorating joints and muscles, swollen prostate glands, and open, festering wounds. Neither are Defendants providing adequate accommodations and care for inmates who are blind, handicapped, or wheelchair bound, leaving these men vulnerable to their able bodied, male counterparts.

217.    Already existing broken bones, abscesses, diabetes, and a host of other injuries and maladies routinely go without examination, much less medically effective treatment, at

Parchman. For example, Plaintiffs in this action insert their own catheters, treat their own stab wounds, vomit up blood, teeter on the verge of diabetic comas, and suffer through seizures without medical care. Even a broken neck can go without treatment at Parchman, with the inmate being left to suffer through his injury while sleeping on exposed, steel bedsprings with no mattress. So bad is the medical care at Parchman that inmates have resorted to lighting fires in conditions of total confinement, where escape from smoke and flames is impossible, simply to draw attention to emergent medical issues occurring in the housing units.

218. The introduction of COVID-19 into Parchman has only slowed down and further denied Plaintiffs access to healthcare. In addition to delaying and denying Plaintiffs access to testing and treatment, Defendants isolate positive inmates and quarantine close contacts improperly. Defendants have designated Unit 29, Building A as a "transition unit" used for inmates who "enter MSP from another facility and/or if they have an off grounds appointment." Unit 29, Building A is an open air building, not separate and closed as stated in the Centurion Plan; and inter-transferred inmates are not consistently housed in Unit 29, Building A for fourteen days and in some instances are transferred directly to their housing unit. If unfortunate enough to receive a positive COVID-19 diagnosis, the care received is far below proper standards to overcome the virus.

219. Additionally, the grossly inadequate healthcare provided by Defendants in many instances has caused Plaintiffs to suffer physical injuries in addition to those for which Plaintiffs sought treatment for in the first instance. For example, Plaintiff Jermaine Moore, MDOC # 82002, who was ordered by his sentencing judge to be transferred to a facility where he could receive therapy for malignant ventricular arrhythmia during his incarceration, has been housed at Parchman for over a year and received no therapy or significant treatment for his leg. As a

result, he has developed a hernia and now fears he may lose his leg due to regular infections during his incarceration. His left leg is swollen, black and in constant pain. Additionally, he has lost all ability to control his bowel movements and urination. Furthering his injuries, in July of 2020, Plaintiff Moore was diagnosed with COVID-19, at no point in his treatment did he receive individualized care for his symptoms leaving him to care for himself and rely on the kindness of other inmates to assist him as he struggles to freely move around his Unit.

220.    As bad as the medical care is at Parchman, the mental health care is worse. In fact, it is virtually nonexistent. There is no legitimate mental health screening program for inmates and, for those inmates who have been diagnosed with mental illness prior to arriving at Parchman, there is no treatment. Mental health professionals rarely visit the housing units to speak with inmates, and when they do they provide only cursory, non-confidential "check-ups" to inmates, many of whom are suicidal or suffer from serious mental illness. There are examples of inmates with past instances of suicide, or who have voiced suicidal inclinations, committing suicide in Parchman after their cries for help are endlessly ignored. One man's last words were, "I'm tired of this shit. They don't care about me or my food. I'm about to kill myself!"

221.    Many Plaintiffs result to self-harm as a result of the extreme mental duress caused and/or not properly diagnosed and/or treated by Defendants, while others are the subject of violent attacks from inmates whose mental illnesses go untreated.

222.    One Plaintiff, for example, was diagnosed with Post Traumatic Stress Disorder prior to arriving at Parchman and has requested numerous times unsuccessfully to be seen by a psychiatrist. Another Plaintiff has had multiple suicide attempts but has received little or no mental health treatment. As of late, due to Defendants improper isolation and quarantine methods of COVID-19 positive inmates, many Plaintiffs report that their mental health is

deteriorating due to their fear of COVID-19 exposure and the lack of treatment they would receive if diagnosed. When they look to seek care for their distress, they are often times downplayed by Defendants or simply ignored. By allowing this pattern to continue, Defendants perpetuate their ability to provide substandard care. With fewer inmates diagnosed, there are fewer inmates to treat, which means less work for Defendants and more profit for their vendors.

### CENTURION'S MISHANDLING OF THE COVID-19 PANDEMIC

223.    Plaintiffs, being incarcerated persons at Parchman, are held in close confinement with other prisoners, in grossly unsanitary conditions, and under a healthcare system that has come under scrutiny for failing to meet even basic healthcare needs. Thus, Plaintiffs, along with other inmates at Parchman, are extremely susceptible to COVID-19, which long ago was elevated to pandemic status by the World Health Organization.   Indeed, as of December 16, 2021, Mississippi has documented 522,455 cases of COVID-19 and 10,354 total deaths.[109] To illustrate, Sunflower County had 4,380 active cases of COVID-19 and a county population of 25,110.[110] Many of the correctional officers, staff members, and leadership of Parchman live in Sunflower County, coming in and out of Parchman daily.   The sheer volume of cases in Mississippi and Defendants' inept screening, policing, combatting, and overall attitude surrounding the COVID-19 pandemic within Parchman's walls has created a dangerous ticking time bomb where the Plaintiffs reside.

224.    As detailed *supra*, treatment at Parchman for minor ailments is hard to come by, not to mention the struggle inmates endure seeking treatment required for serious diseases necessitating long-term monitoring and medication. As a result, outbreaks of COVID-19 within

---

[109] https://msdh.ms.gov/msdhsite/_static/14,0,420.html
[110] Mississippi Department of Health, *Sunflower County COVID-19 Cases and Death by Age Group through August 1, 2020*. https://msdh.ms.gov/msdhsite/_static/resources/10111.pdf

Parchman – where many inmates suffer from respiratory diseases that place them at an increased risk – have overwhelmed Parchman's broken medical apparatus and have wreaked havoc on the health and safety of the inmate population.

225.    Plaintiffs report symptoms of COVID-19 but are often times denied testing to confirm or deny their diagnosis, leaving them under-, mis-, or untreated.

226.    Defendants failed to effectively implement their policies that relate and respond to the COVID-19 pandemic, including failing to follow and/or implement hygiene measures, use of personal protective equipment ("PPE"), and social distancing during temperature checks (if the temperature checks even take place at all). These simple practices were being ignored or inconsistently applied at Parchman.

227.    As of November 19, 2021, at least 112 inmates have tested positive for COVID-19 at Parchman.   Multiple other inmates have died after having tested positive of COVID-19.   The physical injuries, and worse, suffered by these inmates were caused by Centurion's substandard care, and, specifically, by the failure of Centurion's staff to adequately test, monitor, and treat inmates who have displayed COVID-19 symptoms. For example, as stated *supra*, Defendants improperly use Unit 29, Building A as a quarantine building where they house positive inmates, inter- and intra- transfer inmates, and other suspected positive inmates in one open-air building. Some of these transfer inmates included an inmate who was suffering from cancer and had to leave Parchman every couple of weeks for outside treatments. When brought back he was housed in Unit 29, Building A for a quarantine period where he was exposed to COVID-19 positive or presumed positive inmates who have the potential to infect him in his already vulnerable state. COVID-19 exposure for inmates like this can mean the difference between life and death.

41

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

228.    Plaintiffs have exhausted, or should be deemed to have exhausted, all administrative remedies available to them.

229.    The administrative remedy program at Parchman ("ARP"), which is intended to provide Plaintiffs a mechanism for their grievances to be heard and acted upon within 90 days, is so broken and ineffective that essentially there is no ARP at Parchman.

230.    Plaintiffs do not have ready access to ARP forms. The forms must be requested from a guard. Since guards know that ARP grievances often concern guard behavior, guards predictably are not enthusiastic about providing forms to inmates. If an inmate cannot get a form, the grievance process for that inmate ends immediately. If the inmate does get his hands on a form, he still must have the guard's assistance to collect the form and ensure it reaches the ARP boxes. Guards routinely are witnessed discarding or ripping up completed ARP forms. If a completed form does find its way to the box labeled ARP, it often languishes for months before reaching the ARP administrator, if ever. Ultimately, very few forms are fortunate enough to be reviewed by the administrator, and the vast majority of those are denied. The lengths to which Defendants will go to deny grievances would be comical if it were not so heart-breaking for so many men relying on Defendants to operate a fair and just system. For example, a grievance about the condition of a cell will be denied if an inmate mentions both leaks and water on their form, or rats and mold, as these are deemed to be a violation of the rule requiring only one grievance per form. Even more insidious, many ARP forms are not addressed by the administrator until after the appeal deadline has passed. In this way, Defendants ensure that inmate grievances that ultimately are denied cannot be appealed.

42

231.     Based on information and belief, many Plaintiffs have been held in isolation in segregated units for months or years. These Plaintiffs, as a product of their segregated incarceration, have been denied access to ARP forms while in punitive units. Given that these Plaintiffs have been precluded from receiving ARP forms during their segregated incarceration, and that their period of segregated incarceration has lasted more than 90 days, these Plaintiffs should be deemed to have exhausted their administrative remedies.

232.     Notwithstanding the foregoing, Plaintiffs have affirmed by declaration that they collectively have filed ARP grievances on substantially all of the issues touched by this Complaint, and these grievances either have been denied, never were received, or never were acted upon by the ARP administrator and Defendants.

233.     A foundational assumption underlying the concept of exhaustion is that genuine administrative remedies, and the due process they are accorded, are actually available to inmates. If administrative remedies are not genuinely available, then Plaintiffs cannot be held to the exhaustion standard as a bar to the courts. Parchman's ARP is a façade. It is a remedy procedure in name only. In fact, Parchman's ARP is designed intentionally to provide the illusion of an administrative remedy program without affording grievances any consideration at all, much less actual due process. Without due process vis-à-vis a legitimate administrative remedy program, Plaintiffs cannot be divested of their rights to the courts. Accordingly, Plaintiffs respectfully request that the Court find that Plaintiffs have exhausted the administrative remedies available to them at Parchman, which are effectively none.

### INCORPORATION

234.     Each section herein, under any heading or no heading at all, is incorporated into every other section herein, such that this Complaint is to be read as a whole. All factual

allegations apply to all claims, to the fullest extent possible. Moreover, Plaintiffs adopt and incorporate by reference those factual allegations contained within the various pleadings filed to date in the *Amos* and *Lang* matters.

## CLASS ACTION ALLEGATIONS

235.    Plaintiffs seek to represent a class consisting of all prisoners who are now as of the date of the filing of this action, or will in the future be, confined at Parchman.

236.    There currently are just over 1,900 inmates confined at Parchman. The members in the class are too numerous, and the membership of the class too fluid, to permit joinder of all members. All class members are subject to the unconstitutional and unlawful conditions described in this Complaint, and common questions of law and fact exist as to all class members and all Defendants. Common questions include, without limitation, whether conditions of confinement for inmates at Parchman violate their rights under the Eighth and Fourteenth Amendments to the United States Constitution; whether systemically inadequate medical, mental health and dental care provided to inmates at Parchman violate their rights under the Eighth and Fourteenth Amendments to the United States Constitution; and whether the policies, procedures and actions of MDOC in administering Parchman, generally, and administering its housing conditions, safety, and medical care, specifically , fail to satisfy the Eighth and Fourteenth Amendments to the United States Constitution. These questions of law and the resulting claims are typical to all potential class members. Plaintiffs, and their counsel who are experienced civil litigators, are capable of fairly representing the class.

237.    Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final declaratory, injunctive, equitable and legal relief with respect to the class as a whole.

## Claims for Relief

### CLAIM I: EIGHTH AMENDMENT

238.    Defendants have acted, and continue to act, with deliberate indifference to Plaintiffs' serious health and safety needs, and have violated their rights under the Eighth Amendment to the United States Constitution, by consciously subjecting Plaintiffs to the grossly inhumane and dangerous conditions of confinement and to the extreme deprivations of basic medical and mental health care.

### CLAIM II: DENIAL OF PROCEDURAL DUE PROCESS

239.    Plaintiffs have been, and continue to be, subject to confinement in segregated or punitive units, buildings and/or zones that impose upon them atypical and significant hardships in relation to the ordinary incidents of prison life without affording Plaintiffs minimal notice, the opportunity to be heard, and other basic procedural safeguards. As a direct and proximate result, Defendants have denied, and continue to deny, Plaintiffs due process in violation of their rights under the Fourteenth Amendment to the United States Constitution.

### CLAIM III: 42 U.S.C. § 1983

240.    Defendants, under color of state law, have deprived, and continue to deprive, Plaintiffs of their rights, privileges, and/or immunities secured by the Constitution and laws of the United States. As a direct and proximate result, Plaintiffs have suffered harm and continue to suffer harm, including at times specific instances of manifested physical injuries, as described herein.

### CLAIM IV: 42 U.S.C. § 1983 - ENVIRONMENTAL CONDITIONS

241.    Defendants have acted, and continue to act, with deliberate indifference to Plaintiffs' serious health and safety needs, and have violated their rights under the Eighth

Amendment to the United States Constitution, at times causing physical injury to the Plaintiffs, including, without limitation, by: (1) knowingly allowing Plaintiffs to be subject to living conditions wherein rats, insects, and other vermin run freely through the housing units, through the cells, over the bunks and the inmates, and into the food; (2) knowingly allowing Plaintiffs to be subject to living conditions wherein water from rain, sinks and toilets runs freely through the housing units and through the cells; (3) knowingly allowing Plaintiffs to be subject to living conditions wherein water intrusion has resulted, and continues to result, in mold and mildew formation including "black mold;" and (4) knowingly allowing Plaintiffs to be confined to living conditions over long periods of time wherein Plaintiffs lack ventilation, electricity, clean water, functioning toilets, showers, exposure to sunlight, exercise, and heat

## CLAIM V: 42 U.S.C. § 1983 – SAFETY

242. Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by: (a) by knowingly enabling, or failing to protect Plaintiffs from, inmate violence; (b) by knowingly enabling, or failing to protect Plaintiffs from, violence at the hands of guards or others; (c) by failing to act in emergencies to protect Plaintiffs from violence at the hands of inmates and/or guards; and (d) by knowingly allowing conditions that foment violence not only to persist but to flourish.

## CLAIM VI: 42 U.S.C. § 1983 - NUTRITION AND FOOD SAFETY

243. Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, as a result of inadequate nutrition and/or dangerous food. Plaintiffs have been, and continue to be, served food infested with rat feces, cockroaches, insects, rocks, bird feces, and

other contaminants. Food is served to inmates cold and undercooked. Many inmates do not receive meals, and often meals are withheld by guards, as a punitive measure, or by other inmates who are allowed to serve food. Even if or when meals at Parchman are distributed, many inmates refuse to consume the food for the reasons listed above, leaving them to either spend copious amounts of money on canteen services to survive or be malnourished, or both. Plaintiffs experience high blood pressure as a result from eating large portions of processed foods.

### CLAIM VII: 42 U.S.C. § 1983 - HEALTH CARE

244.    Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by failing to timely provide medically necessary care from the routine to the emergent. This includes, without limitation, failure to provide basic healthcare, competent wound care, a functioning and accessible sick call, identification and treatment of chronic conditions, provision of short and long term medications, special diets for medical conditions, and accommodations for long term disabilities.

245.    Additionally, Defendants' behavior in this regard has caused significant injury to one or more of the Plaintiffs.  For example:

   a.   Larry Bardney, MDOC# 27397, who has failed to receive proper medical care for his HIV and Hepatitis C, has sores over his body and blood in his stool;

   b.   Mondrick Bradley, MDOC# 46406, was denied medical care after experiencing two punctured eyes, broken or fractured ribs, a broken leg, a crushed ankle, and a busted knee;

   c.   Dwayne Bridget, MDOC# 167410, who was taken off the medication to treat his Bartter's Syndrome, now has scabs all over his body;

47

d. Eric Brown, MDOC# K0577, has epileptic seizures and often hits his head on the floor or on the rack in his cell when he falls during a seizure but receives no medical assistance;

e. Tyler Graham, MDOC# 111109, receives seizure medicine only sporadically, has placed 5-6 sick calls with no response;

f. Ted Mangum, MDOC# R3209, wears glasses but has not had an eye exam or physical in years;

g. Sammie Johnson, MDOC# 58463, a diabetic with only a partial pancreas, does not have regular insulin shots, and does not receive a diabetic diet;

h. Tommy Kimble, MDOC# 72981, has had staph infections since 2003 but first received treatment in 2020;

i. Ricky Joseph Gavin, MDOC# 153557, is vision impaired, but has not yet received glasses;

j. Richard J. Wilson, MDOC# 217821, was stabbed multiple times in front of an officer but never received treatment although he placed two sick calls; and

k. Remington Steele, MDOC# 106989, was stabbed in the head and now suffers from seizures.

### CLAIM VIII: 42 U.S.C. § 1983 - MENTAL HEALTH CARE

246. Defendants, with deliberate indifference, by their policies, procedures and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by failing to provide Plaintiffs any meaningful mental health services. The deficiencies run the gamut from failure to properly screen Plaintiffs for mental health issues, to failure to

document mental health issues, to failure to treat and/or accommodate Plaintiffs who have been diagnosed with mental health conditions.

247.    Additionally, Defendants' behavior in this regard has, caused significant physical injury to Plaintiffs.  For example:

a.  Corey James Wells, MDOC# 140752, attempted suicide due to abuse but has never received mental health care for same;

b.  Efrem Whitfield, MDOC# 112686, was diagnosed with bipolar and schizophrenic disorder and has not received any medication while incarcerated at Parchman, has attempted suicide and requested a psychiatric evaluation but never received an evaluation; and

c.  Romaire James Earl Brown, MDOC# 193776, suffers from post-traumatic stress disorder due to witnessing three murders on his zone within a few months.

### CLAIM IX: 42 U.S.C. § 1983 - ACCESS TO COURTS / RETALIATION

248.    The U.S. Constitution affords Plaintiffs the right to access the courts without unreasonable interference. Yet, Defendants, their agents, and employees have erected barriers designed intentionally to frustrate Plaintiffs' efforts to secure counsel and bring legitimate claims against Defendants regarding conditions at Parchman. By doing so, Defendants are following a time-honored tradition at Parchman of hiding shameful conditions, not only by concealing them behind barbed wire, high walls, and locked doors, but also by denying Plaintiffs the ability to seek redress in open court.

249.    Since the filing of *Amos v. Cain*, 4:20-cv-0007-DMB-JMV, Defendants, without a legitimate correctional purpose, have: (a) engaged their labyrinthine bureaucracy, and its endless parade of unwritten rules, policies, and procedures, to thwart meetings between Plaintiffs and

counsel; (b) created forms and other formal requirements that did not exist, or were not enforced, previously to impede access to counsel; (c) ransacked Plaintiffs' cells under the guise of seeking contraband in order to justify confiscating legal papers; (d) used inmate transfers from one unit to another, often the day before an attorney visit, as an excuse to delay the visit or cancel it altogether; and (e) most egregiously, perpetrated violence, or threatened violence, against Plaintiffs for meeting with counsel and/or participating in this lawsuit.

250.    For example, Defendants, after *Amos v. Cain* was filed, altered their longstanding procedure governing attorney visits with inmates. Without a concomitant written policy, Defendants began requiring inmates, including Plaintiffs, who wished to meet with their counsel, to complete the cumbersome Inmate Legal Assistance Program ("ILAP") form that serves no correctional interest but is designed solely to frustrate or impede Plaintiffs' right to counsel.

251.    The ILAP form relates to ILAP requests, where an inmate is requesting legal assistance through the ILAP office. This is inapplicable to inmates, such as Plaintiffs, who already have counsel or know the specific counsel they wish to engage. Nevertheless, Plaintiffs and other inmates with counsel are now required to complete the ILAP form, which requires detailed information including the attorney's address. This is an intentional barrier to inmates securing counsel which serves no legitimate correctional interest. In fact, Defendants know that inmates, including Plaintiffs, who are incarcerated, often in segregation, do not know their attorney's address. This is especially true when family members hire counsel for inmates, including Plaintiffs. Without the attorney's address, Plaintiffs and other inmates cannot complete the ILAP form and cannot meet with counsel.

252.    Similarly, even when Plaintiffs and other inmates successfully complete the complicated ILAP form, still they are routinely, and in the cases of some inmates, repetitively, denied access to counsel.

253.    In addition to delaying access to counsel, Defendants have also transferred Plaintiffs around in a retaliatory manner. For example, Defendants moved certain inmates out of the medical unit, Unit 31, and into other units after they sought counsel and assisted in exposing Defendants lack of adequate medical care. These inmates did not receive the requisite care to be moved back to general population and their moves were only done so after their cooperation with counsel was made known to the Defendants

254.    Defendants, with deliberate indifference, by their policies, procedures, and actions, have subjected, and continue to subject, Plaintiffs to harm, and a substantial risk of imminent harm, by taking actions that delay or prevent Plaintiffs from communicating with counsel and accessing the courts; by not only failing to take action necessary to facilitate reasonable communication with counsel, but by taking affirmative actions to interfere with their attempts to do so; and by failing to take action necessary to provide Plaintiffs' constitutionally protected right to access the Courts. Delayed access to counsel, is delayed access to the courts, which results in prolonged exposure to the conditions complained of herein and the associated risks of imminent harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.  Declare this action is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b);

2.  Certify the classes and subclasses of Plaintiffs named above;

3. Issue a judgment declaring the past and current actions of Defendants described herein, along with those acting under their authority, at their direction, or on their behalf, unlawful and in violation of Plaintiffs' rights under the laws and Constitution of the United States;

4. Preliminarily and permanently enjoin Defendants, along with those acting under their authority, at their direction, or on their behalf, from subjecting Plaintiffs to the conditions set forth in this Complaint;

5. Order Defendants to develop and implement a plan, as soon as practical but no later than 90 days, to eliminate the substantial risk of harm to Plaintiffs caused by the health, safety and environmental conditions described in this Complaint, and/or existing at Parchman in violation of Plaintiffs' Constitutional rights;

6. Order Defendants to develop and implement a plan, as soon as practical but no later than 90 days, to eliminate the substantial risk of harm to Plaintiffs caused by the retaliation against, and/or threats, and/or abuse of inmates, for seeking access to counsel and/or the courts;

7. As to all Defendants, award nominal damages in an amount sufficient to compensate Plaintiffs who have sustained mental health or emotional damages as a result of the Defendants' constitutional deprivations as set forth above;

8. Award Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

9. Retain jurisdiction over this matter until Defendants have fully complied with all orders of this Court; and

10. Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ Marcy B. Croft*
Marcy B. Croft (MS Bar # 10864)

**Of Counsel:**

MJ Legal P.A.
PO Box 12159 Jackson, MS 39236-2159
T: 601-259-5708
E: marcy@mj-legal.com


Charles Stam (MSB # 106063)
Zehl & Associates
2700 Post Oak Blvd, Suite 1000
Houston, TX 77056
Telephone: (713) 999-0560
cstam@zehllaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was filed via ECF which automatically serves a copy on all counsel of record, including counsel for the Defendants:

RESPECTFULLY SUBMITTED, this the 12th day of January, 2022.

_/s/ Marcy B. Croft_
Marcy B. Croft (MS Bar #10864)