IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL AMOS, et al.                                                                                                         PLAINTIFFS

v.                                               CIVIL ACTION NO. 4:20-CV-7-SA-JMV

NATHAN BURL CAIN, et al.                                                                        DEFENDANTS

*Consolidated with*

DARRAN LANG, et al.                                                                                              PLAINTIFFS

v.                                               CIVIL ACTION NO. 4:20-CV-30-SA-JMV

JEWORSKI MALLET, et al.                                                                         DEFENDANTS

ORDER AND MEMORANDUM OPINION

Now before the Court is the Defendants' Motion to Dismiss [318]. The Motion [318] has been fully briefed and is ripe for adjudication. The Court has reviewed the filings, along with the applicable authorities, and is prepared to rule.

*Relevant Factual and Procedural Background*

This civil case is a putative class action involving a total of 277 Plaintiffs. The Plaintiffs include former and current inmates of the Mississippi State Penitentiary ("MSP") located in Parchman, Mississippi. The Plaintiffs allege that the conditions at MSP are so egregious that they violate the Plaintiffs' constitutional rights. They request declaratory and injunctive relief as to those conditions.

This consolidated action was initially filed as two separate cases. The first lawsuit was commenced on January 14, 2020, when 29 Plaintiffs filed their Complaint [1] against Pelicia E. Hall (in her official capacity as Commissioner of the Mississippi Department of Corrections) and Marshal Turner (in his official capacity as the Superintendent of MSP). Since that time, the parties

have engaged in extensive motion practice, and the Plaintiffs have amended their Complaint on multiple occasions. A second lawsuit was initiated on February 25, 2020. That lawsuit involved the same subject matter and many of the same Defendants. As a result, on November 12, 2020, the Court entered an Order noting that "[b]oth cases involve current and former prisoners at Parchman alleging violations of their constitutional rights based on the conditions within the prison, the plaintiffs and the defendants are represented by the same counsel in both actions, and the procedural postures of the cases [are not significantly different]." *See* N.D. Miss. Cause No. 4:20-CV-30-SA-JMV, [56] at p. 3. The Court therefore consolidated the cases pursuant to Rule 42 of the Federal Rules of Civil Procedure.

On January 12, 2022, the Plaintiffs filed their Second Amended Complaint [316], which is now the operative Complaint. The Second Amended Complaint [316] includes 179 Plaintiffs who request class status and seek declaratory and injunctive relief as to the conditions at MSP.[1] The Second Amended Complaint [316] names as Defendants: Nathan "Burl" Cain (in his official capacity as Commissioner of MDOC); Jeworski Mallett (in his official capacity as Deputy Commissioner of Institutions for MDOC); Timothy Morris (in his official capacity as Superintendent of MSP); Donald Faucett (in his official capacity as Chief Medical Officer of MDOC); Lee Simon (in his official capacity as the Warden of Area I of MSP); Tracy McDonald (in his official capacity as the Warden of Area II of MSP); and Sonja Stanciel (in her official capacity as Chief of Security of MSP).

Through the present Motion [318], the Defendants request that the Court dismiss the claims of 197 of the 277 Plaintiffs. In making that request, the Defendants separate the 277 Plaintiffs into

---

[1] The Court recognizes the obvious discrepancy between the previous statement that the case involves 277 Plaintiffs and the fact that the Second Amended Complaint [316] lists only 179 Plaintiffs. The Court will address that discrepancy more fully hereinafter.

different categories, making specific arguments as to each category. The Motion [318] has been fully briefed.

*Analysis and Discussion*

The Defendants raise two main arguments to support their Motion [318]. First, they assert that the Plaintiffs who are no longer housed at MSP lack standing to proceed. Second, they contend that the unrepresented Plaintiffs who have not complied with the Court's previous Orders [239, 264] should be dismissed for failure to prosecute.[2] Prior to addressing these arguments, the Court will further expound upon the various categories of Plaintiffs and the different arguments applicable to each group. Because the Defendants have concisely explained these categories, the Court quotes from their Memorandum [319]:

> One hundred and ninety-seven (197) named Plaintiffs should be dismissed for the reasons set forth in Defendants' Motion and this Memorandum, some of them for overlapping reasons. Of those 197 Plaintiffs, 144 are represented by counsel and 53 are not. The following paragraphs and accompanying table seek to explain to the Court the categories of named Plaintiffs who should be dismissed from this consolidated action.
>
> Ninety-eight (98) represented Plaintiffs who were included in the consolidated Second Amended Complaint filed on January 12, 2022 [Doc. 316] admit they are no longer housed at MSP, an admission that renders their claims moot ("**Admittedly Transferred Plaintiffs**"). Forty-five (45) additional represented Plaintiffs were included in the original amended complaints but were totally omitted by their counsel from the Second Amended Complaint [Doc. 316] such that they no longer assert a case or controversy and have abandoned any claims they may have had against Defendants ("**Omitted Plaintiffs**"). Forty-three (43) of the 45 Omitted Plaintiffs also cannot prove they are housed at MSP or that they have an expectation of returning.
>
> All 53 *pro se* Plaintiffs are subject to dismissal on the basis that they are not adequate class counsel and representative ("**Pro Se**

---

[2] There is some overlap between these two categories. For instance, some of the Plaintiffs against whom the Defendants seek dismissal are proceeding *pro se* and have not complied with the Court's previous Orders but are also no longer incarcerated at MSP.

3

> **Plaintiffs**"). Of those 53 *Pro Se* Plaintiffs, 43 are also not housed at MSP and have no demonstrated probability or expectation of being re-incarcerated there. ("**Transferred *Pro Se* Plaintiffs**"). And 52 of the 53 have also failed to prosecute their claims or obey orders of the Court ("**Nonprosecution Plaintiffs**").

[319] at p. 2-3 (emphasis in original).

With those categorizations in mind, the Court turns to the Defendants' specific arguments for dismissal.

> I.  *Pro Se and Omitted Plaintiffs*

Because it is dispositive as to many of the Plaintiffs, the Court begins with the Defendants' second argument. The Defendants contend "[t]here are 53 *Pro Se* Plaintiffs, 52 of whom have not prosecuted their claims or followed orders of the Court despite repeated warnings of the consequences for failing to do so." [319] at p. 17. This argument stems from those Plaintiffs' failure to comply with the Court's prior Orders.

On August 16, 2021, this Court entered an Order [239] which in pertinent part directed parties on whose behalf there was no counsel of record:

> Plaintiffs listed in [Paragraph] 1 above are directed to notify the Court in writing on or before September 16, 2021, as to whether they will continue to proceed pro se or with new counsel. If any plaintiff intends to proceed with new counsel, new counsel must enter an appearance herein on or before September 16, 2021. **Plaintiffs are warned that failure to comply with this order may lead to dismissal of their claims for failure to prosecute**.

[239] at p. 3 (emphasis added).

Only one Plaintiff, Charles Gayles, responded to this Order and indicated his intent to proceed *pro se*. *See* [242].

This Court recognized the other Plaintiffs' failure to respond in another Order [264] entered on October 7, 2021. In that Order [264], the Court noted as follows:

4

> It has now been approximately 21 days since the September 16 deadline, and only one Plaintiff, Charles Gayles, has responded to the August 16 order. And, no attorney has entered an appearance on behalf of the plaintiffs listed above. Neither has any plaintiff listed above requested additional time to comply with the August 16 order.
>
> THEREFORE, IT IS ORDERED that on or before October 25, 2021, the *pro se* plaintiffs listed above, except Mr. Gayles, must show cause in writing why the Court should not consider their claims abandoned and why their claims, consequently, should not be dismissed for failure to prosecute and for failure to obey an order of the Court. Plaintiffs are warned that failure to comply with this order and/or keep the Court informed of a current mailing address may lead to dismissal of their claims for failure to obey an order of the Court and/or failure to prosecute.

[264] at p. 2-3 (internal citations omitted).

Citing these Orders [239, 264] and the *Pro Se* Plaintiffs' continued failure to comply, the Defendants assert that the *Pro Se* Plaintiffs' claims should be dismissed. This Court is cognizant that leniency should be extended to *pro se* litigants. *See*, *e.g.*, *Calhoun v. Hargrove*, 312 F.3d 730, 733-34 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)) ("It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'"); *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) (noting that federal courts "have a traditional disposition of leniency toward *pro se* litigants"). However, the Court cannot excuse the *Pro Se* Plaintiffs' failure to comply with the most fundamental requests, such as affirmatively indicating their intent to proceed with their claims.

Consequently, the Court accepts the Defendants' arguments on this point. The claims of the 52 *Pro Se* Plaintiffs who have not complied with the directives of this Court are hereby dismissed for failure to prosecute.[3] Those Plaintiffs are:

> Andrew Alexander, Gregory Canderdy, Wesley Clayton, Donte Conner, Dustin Crump, Antonio Davis, Jonathan Davis, James

---

[3] The Court will not dismiss the claims of Charles Gayles, who has, at least to some extent, complied with this Court's directives. His claims will be addressed more fully hereinafter.

> Dooley, Chancellor Eaton, Isaac Garner, Antonio Goldman, Stephen Grisham, Justin Hammons, Desmond Hardy, Kewan Hosey, Alchello House, Dennis Jobe, Quenten Johnson, Michael Jones, Frederick Jordan, Deaunte Lewis, Jimmie Magee, Larry Maxwell, Kentrures McCoy, Kristopher Meisenholder, Tyler Miller, Sammy Miller, Bobby Mitchell, Alex Morris, Timothy Myers, Cory Page, Jeremiah Patterson, Marcus Ramsey, Michael Ray, James Richards, Brandon Robertson, Quincy Robertson, Charles Daniel Scrimpshire, Phillip Shumaker, Christopher Smith, Robert Sylvester Smith, Keion Stanfield, Jammichael Strong, Cordarius Strong, James Sudduth, Michael Tarvin, Charlie Taylor, Keith Thayer, Kevin Thomas, Mark Thomas, Zarek Tyler, Kendrick Tyson

[318], Ex. 4 at p. 1-3.

As noted above, the claims of those Plaintiffs are dismissed for failure to prosecute. Those Plaintiffs are hereby terminated as litigants in this case.

The Defendants also request dismissal of the claims of the "Omitted Plaintiffs." As noted above, the "Omitted Plaintiffs" category consists of the Plaintiffs who were listed as a party in one of the previous Complaints but were not listed in the now-operative Second Amended Complaint [316]. The Defendants contend that the "Omitted Plaintiffs" have abandoned their claims and should therefore be dismissed. In their Response [331], the Plaintiffs represent that they "make no argument about the 45 former plaintiffs who were in prior pleadings but are not party to the Second Amended Complaint." [331] at p. 14. The Court also notes that none of those individuals have filed a separate response to the Motion [318].

As these individuals are no longer listed as parties in the operative Complaint [316] and have not otherwise indicated their intent to pursue relief, the Court agrees that their claims should be dismissed. Those individuals are:

> Jamar Allen, Christopher Ballard, John Henry Barnett, Kevin Boyd, Charles Brown, Marlon Bruce, Keyshun Burnside, Jonathan Burns, Carlos Carter, Michael Cannon, Ted Dewayne Cauthen, Demario Coleman, Nathan Collier, Nicholas Crawford, Walter Dennis Cox,

6

> Antonio Davis, Erphon Davis, Henry Dennis, James Durr, Lorenzo Evans, Ray Evans, Joseph Glenn, Kenneth Gowdy, Jonathan Ham, Carlos Henderson, George Hudson, Billy James Jr., Shun January, Calip Johnson, Shaquille Johnson, Newton Knight, Curtis Lipsey, Adrian Martin, Bradley Mask, Jesse McCuin, Bobby Montson, Victor Otempong, Derrick Pam, Travis Partee, Russell Reich, Kendrick Ross, Frederick Spires, Marcus Vaughn, John Fitzgerald Ware, Antwune Washington

[318], Ex. 4 at p. 1-3.

The claims of these Plaintiffs are hereby dismissed, and they are terminated as litigants in this case.

   II.   Standing

The Court next turns to the Defendants' standing arguments. The Defendants originally contended that the claims of 187 Plaintiffs should be dismissed on this ground. However, because there is significant overlap with the categories of Plaintiffs addressed in the preceding Section, there are only 99 remaining Plaintiffs who are subject to this argument. This number includes the 98 "Admittedly Transferred Plaintiffs" as well as one additional Plaintiff, Nicholas Brooks, who has been released from custody altogether since the initiation of this litigation.

The Defendants attached to their Motion [318] a sworn Declaration of Jeworski Mallett, who serves as the Deputy Commissioner of Institutions for MDOC and is one of the Defendants in this lawsuit. *See* [318], Ex. 1. Mallett's Declaration includes an explanation of MDOC's procedures for transferring inmates and also includes extensive documentation showing that the above-referenced 187 Plaintiffs (with only 99 Plaintiffs still being relevant for purposes of the present analysis) are in fact no longer housed at MSP—either by reason of transfer to another facility or release from MDOC custody altogether. *See id*.

"Article III's case-or-controversy requirement imposes an 'irreducible constitutional minimum of standing,' which consists of three elements: (1) a plaintiff must have suffered an

7

injury in fact—an invasion of a legally protected interest which is . . . concrete and particularized, and . . . actual or imminent; (2) there must be 'a causal connection between the injury and the conduct complained of'; and (3) the injury must be likely to be redressed by a favorable decision." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001)). Importantly, Article III standing must exist not only at the outset of the litigation but must persist throughout its existence. *Id*. (citing *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). To that end, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id*. (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013); *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)) (internal quotation marks omitted).

The Defendants contend that an appropriate application of this standard renders moot the claims of the Plaintiffs who are no longer housed at MSP because, even if the Court were to grant the relief requested in the Second Amended Complaint [316], the Admittedly Transferred Plaintiffs would not be affected. The Plaintiffs do not dispute the underlying information provided in Mallett's Declaration. In other words, the Plaintiffs agree with the Defendants' representations as to which Plaintiffs have been transferred and which Plaintiffs have been released altogether. Furthermore, the Plaintiffs agree that those Plaintiffs who have been "released entirely from incarceration rather than being transferred between MDOC facilities" should be dismissed from this lawsuit based upon the mootness doctrine. [331] at p. 14. The Plaintiffs disagree, however, with the Defendants' arguments as to those Plaintiffs who are still in MDOC custody but have simply been transferred away from MSP to a different facility. They contend that these individuals

8

"retain standing despite their transfer from Parchman." *Id*. at p. 2. The Court will address those arguments but, first, will dismiss the claims of the individuals who have been released from MDOC custody altogether, recognizing that the Plaintiffs do not oppose the Defendants' argument on that issue. Those individuals are:

> Troy James Ford, Tyler Graham, Michael Jamison, Billy Lee, Chad Marshall, Tyredius Roberts, Joseph Stanford, Nicholas Brooks

[318], Ex. 2 at p. 1-5.

The claims of those particular Plaintiffs are hereby dismissed, and they are terminated as litigants in this case.

That leaves only the Plaintiffs who have been transferred from MSP yet remain in MDOC custody. The Fifth Circuit has previously analyzed mootness in a conditions of confinement case originating from this Court. *See Smith v. City of Tupelo, Miss.*, 281 F. App'x 279 (5th Cir. 2008). There, the plaintiff was arrested on open container and possession of crystal methamphetamine charges and placed in the Lee County Jail until he was taken before a justice court judge three days later. *Id*. at 281. He later filed a civil lawsuit requesting, among other relief, injunctive and declaratory relief based upon the conditions of confinement at the Lee County Jail. *Id*. at 282. On appeal, the Fifth Circuit affirmed this Court's finding that the case was rendered moot after the plaintiff was released from the facility. *Id*. Specifically, the Fifth Circuit held that "[a] claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release *or transfer* from the facility." *Id*. (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)) (emphasis added). The Fifth Circuit further noted that "[a]ny suggestion of relief

9

based on the possibility of future detention in the Lee County holding cell is too speculative to warrant relief." *Id*. (citing *Herman*, 238 F.3d at 665).[4]

While the Defendants rely on cases such as *Smith* to support their mootness argument, the Plaintiffs emphasize that inmates who are transferred away from MSP by MDOC are often transferred back to MSP prior to being released. The Plaintiffs provide a chart listing eighteen individual Plaintiffs who MDOC has transferred away from MSP only to be returned later. They emphasize that MDOC controls whether the inmates are transferred and that the Defendants should not be able to simply moot the case by initiating transfers of all Plaintiffs, only to have them later be returned to MSP.

To support their position, the Plaintiffs point to the Fifth Circuit's decision in *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002). There, the Fifth Circuit noted that an inmate seeking to challenge conditions of confinement at a facility where he is no longer housed "must show either a 'demonstrated probability' or a 'reasonable expectation' that he would be transferred back to [the facility] or released and reincarcerated there." *Id*. at 741 (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)). This Court has recently recognized this standard, particularly holding that "[o]rdinarily, a prisoner's transfer to another facility 'renders his claims for declaratory and injunctive relief moot.' To establish that his claims are not moot, [the plaintiff] 'must show either a "demonstrated probability" or a "reasonable expectation" that he will be transferred back to MSP." *McMillian v. MDOC*, 2021 WL 2463563, at *4 (N.D. Miss. June 16, 2021) (quoting *Herman*, 238 F.3d at 665; *Oliver*, 276 F.3d at 741). "At its most lenient, the

---

[4] In *Smith*, the Fifth Circuit analyzed separately the plaintiff's claims for injunctive and declaratory relief as opposed to his claims for monetary damages. The claims for monetary damages were not dismissed as moot but were instead addressed on the merits. Unlike *Smith*, in the case at bar, the Plaintiffs have only brought claims for injunctive and declaratory relief.

10

standard is not 'mathematically precise' and requires only a 'reasonable likelihood' of repetition." *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)).

The Plaintiffs also note Supreme Court precedent for the proposition that "a defendant seeking to establish mootness because his actions have removed the injury faces a stringent and demanding showing." [331] at p. 4 (citing *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)). Although not making any direct bad faith allegations, the Plaintiffs contend that "[t]he MDOC has arranged for thousands of transfers since this litigation began, and there is every indication they will continue this routine practice." [331] at p. 8. Again, the Plaintiffs take the position that because it is so easy for the Defendants to transfer a particular inmate, if the Court were to dismiss each Plaintiff who gets transferred on that ground, the Defendants could essentially moot the entire lawsuit through their own conduct.

Reverting back to the applicable standard, the Court first notes that the situation faced by these individuals differs substantially from cases like *Smith* where the plaintiff was released from custody altogether. In *Smith*, for example, the defendants had no control whatsoever over whether the plaintiff returned to custody at a future date. That fact clearly differentiates *Smith* from the case at bar, where MDOC presumably retains complete control as to whether any of the subject Plaintiffs are transferred back to MSP. However, the Plaintiffs nevertheless must establish either a "demonstrated probability" or a "reasonable expectation" that they will be transferred back to MSP. *See, e.g.*, *McMillian*, 2021 WL 2463563 at *4.

On that point, as noted above, the Plaintiffs emphasize the chart in their Memorandum [331] which indicates that, since the initiation of this litigation approximately two years ago, 18

11

Plaintiffs have been transferred away from MSP only to be later transferred back there.[5] While 18 Plaintiffs is not an inconsequential number, the Court also notes that this is a putative class action with an extensive number of Plaintiffs. Furthermore, the Court notes that the Plaintiffs themselves admit that MDOC's conduct of transferring inmates is a "routine practice." That leaves the Court with a host of individuals who have, as admitted by the Plaintiffs, been transferred as part of a "routine practice" and who have nothing definitive to indicate that they will ever be transferred back to MSP. As to the potential to return to MSP, the Plaintiffs assert that "[g]iven this record, there is a significant probability that any given one of the Transferred Represented Plaintiffs will be transferred back to Parchman, well above the 'reasonable likelihood' required by Fifth Circuit case law to preclude mootness." [331] at p. 9.

The Court finds the Plaintiffs' theory of merely pointing to previous transfers of various inmates insufficient to constitute a "demonstrative probability" or a "reasonable expectation" that they will be transported back to MSP. The argument is in no way particularized as to any *specific* Plaintiff being subject to a transfer back to MSP. In essence, this argument is speculatory based upon the fact that inmates, some of whom are involved in this litigation, have been transferred in the past. Furthermore, the Plaintiffs cite no cases wherein a court has found the mootness doctrine inapplicable when the inmate provides no particularized evidence indicating that any *particular* inmate faces a potential transfer back to the subject facility. While cognizant that the standard is not one of mathematical precision, the Court finds that the Plaintiffs' arguments here are

---

[5] Although the chart the Plaintiffs provided lists 18 Plaintiffs, they also note that there are two other Plaintiffs (Vincent Currlee and Richard J. Wilson) who are not represented by counsel who fall within this category. However, the Plaintiffs' Response [331] does not provide further information regarding those two Plaintiffs since they are not represented by counsel.

speculative. Without more, the Court finds that the transferred Plaintiffs cannot proceed. Their claims are moot.[6]

Having found that the claims of the transferred Plaintiffs are moot, their claims will be dismissed. Those Plaintiffs are:

> Michael Amos, Caleb Buckner, Willie Friend, William Green, Justin James, Terrance McKinney, Ivery Moore, Derrick Rogers, Deangel Taylor, Lemartine Taylor, Conti Tillis, Carlos Varnado, Adrian Willard, Curtis Wilson, Cedric Andrews, Roger Boyd, Frederick Brown, Dillon Callaway, Lebarron Chatman, Johnathan Clark, Johnny Colton, James Cox, Charles Cross, Ricky Darden, John Davis, Anthony Day, Joseph Dennis, Wendell Duncan, Jamie Elaire, Nigel Farmer, Antron Finklea, Ricky Frierson, Terrence Gatlin, Brandon Gilmore, Dantavious Hairston, Brymon Hamp, Jonathan Herrington, Gregory Hicks, Janarian Hill, Joseph Holiday, Quincy Holmes, Antonio Hoover, Nathaniel Jackson, William Jackson, Michael Jamison, Sellers Johnson, Xavier Johnson, Alexander Jones, Juarez Keyes, Carderrius King, Darran Lang, Malcom Lathan, Justin Lease, Legrane Lenox, Alvin Luckett, Ted Mangum, Chad Marshall, Carles Miles, Eris Moore, Bennie Motten, Brian Nettles, Terry Pierce, Casimir Poe, Wilfred Powell, Mario Ragland, Joseph Lee Reese, Jerry Rice, Emanuel Richardson, Ronaldo Rogers, Leon Ruffin, Jr., Dominico Saddler, Daryl Shinn, Lonnie Sims, Herman Sipp, Jr., Tyler Smith, Lynn Spurlock, Remington Steele, Keith Steinmetz, Darwin Strahan, Demarquis Tate, Christopher Thomas, Eric Thomas, Raymond Thomas, Airick Toins, Qy'Darrious Towns, Linnox Walker, Johnny Wallace, Corey James Wells, Efrem Whitfield, Daniel Williams, Mario Williams, Joe Womack, Dominico Young

[318], Ex. 2 at p. 1-5.

Those Plaintiffs' claims are hereby dismissed, and they shall be terminated as parties on the docket.[7]

---

[6] The Court also emphasizes that, even by finding the claims of these transferred Plaintiffs moot, the Defendants cannot escape judicial review altogether. The class action lawsuit challenging MSP's conditions of confinement will still be permitted to proceed. In the Court's view, this is a critical distinction between this case and a typical case where the dismissal of one plaintiff may moot the entire lawsuit and permit the defendant(s) to altogether evade judicial review.

[7] To be clear, the Court does not adopt a per se rule that a transfer away from a particular facility moots a case as a matter of law. The Plaintiffs express concern about such a rule, and this Court understands that

Despite its ruling, the Court does recognize the Plaintiffs' concerns. In particular, by finding moot the claims of the Plaintiffs who have been transferred from MSP but who remain in MDOC custody, the Court has potentially opened the door for gamesmanship by the Defendants. The Defendants may believe that they can moot this entire lawsuit by transferring the Plaintiffs away from MSP only to transfer them back to MSP if/when the Court dismisses their claims. The Court will not tolerate such conduct.

As noted above, the Court proceeds in issuing this ruling under the assumption (as *admitted* by the Plaintiffs) that the Defendants' transfers have been part of their "routine practice." If at any time throughout the course of this litigation it appears as though transfers begin to occur in any manner other than "routine practice," the Court may reconsider this ruling. The Plaintiffs shall notify the Court if any such practices become apparent. While this case is not a typical one, the Court will not hesitate to fashion an appropriate remedy if the Defendants engage in intentional gamesmanship to subvert judicial review. *See*, *e.g.*, *Hernandez v. Cremer*, 913 F.2d 230, 235 (5th Cir. 1990) (quoting *U.S. v. Oregon State Med. Soc'y*, 343 U.S. 326, 333, 72 S. Ct. 690, 96 L. Ed. 978 (1952)) ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption.").[8]

*Conclusion*

For the reasons set forth above, the Defendants' Motion to Dismiss [318] is GRANTED. The claims of the following Plaintiffs are dismissed *without prejudice*:

> Andrew Alexander, Gregory Canderdy, Wesley Clayton, Donte Conner, Dustin Crump, Antonio Davis, Jonathan Davis, James

---

concern. Rather, as explained above, the Court finds that the Plaintiffs have not shown there is a "demonstrated probability" or "reasonable likelihood" that they will return to MSP.

[8] The Court also notes that its ruling today does not prohibit any Plaintiff who has previously been transferred from re-filing a lawsuit in the event they are transferred back to MSP.

Dooley, Chancellor Eaton, Isaac Garner, Antonio Goldman, Stephen Grisham, Justin Hammons, Desmond Hardy, Kewan Hosey, Alchello House, Dennis Jobe, Quenten Johnson, Michael Jones, Frederick Jordan, Deaunte Lewis, Jimmie Magee, Larry Maxwell, Kentrures McCoy, Kristopher Meisenholder, Tyler Miller, Sammy Miller, Bobby Mitchell, Alex Morris, Timothy Myers, Cory Page, Jeremiah Patterson, Marcus Ramsey, Michael Ray, James Richards, Brandon Robertson, Quincy Robertson, Charles Daniel Scrimpshire, Phillip Shumaker, Christopher Smith, Robert Sylvester Smith, Keion Stanfield, Jammichael Strong, Cordarius Strong, James Sudduth, Michael Tarvin, Charlie Taylor, Keith Thayer, Kevin Thomas, Mark Thomas, Zarek Tyler, Kendrick Tyson

Jamar Allen, Christopher Ballard, John Henry Barnett, Kevin Boyd, Charles Brown, Marlon Bruce, Keyshun Burnside, Jonathan Burns, Carlos Carter, Michael Cannon, Ted Dewayne Cauthen, Demario Coleman, Nathan Collier, Nicholas Crawford, Walter Dennis Cox, Antonio Davis, Erphon Davis, Henry Dennis, James Durr, Lorenzo Evans, Ray Evans, Joseph Glenn, Kenneth Gowdy, Jonathan Ham, Carlos Henderson, George Hudson, Billy James Jr., Shun January, Calip Johnson, Shaquille Johnson, Newton Knight, Curtis Lipsey, Adrian Martin, Bradley Mask, Jesse McCuin, Bobby Montson, Victor Otempong, Derrick Pam, Travis Partee, Russell Reich, Kendrick Ross, Frederick Spires, Marcus Vaughn, John Fitzgerald Ware, Antwune Washington

Troy James Ford, Tyler Graham, Michael Jamison, Billy Lee, Chad Marshall, Tyredius Roberts, Joseph Stanford, Nicholas Brooks

Michael Amos, Caleb Buckner, Willie Friend, William Green, Justin James, Terrance McKinney, Ivery Moore, Derrick Rogers, Deangel Taylor, Lemartine Taylor, Conti Tillis, Carlos Varnado, Adrian Willard, Curtis Wilson, Cedric Andrews, Roger Boyd, Frederick Brown, Dillon Callaway, Lebarron Chatman, Johnathan Clark, Johnny Colton, James Cox, Charles Cross, Ricky Darden, John Davis, Anthony Day, Joseph Dennis, Wendell Duncan, Jamie Elaire, Nigel Farmer, Antron Finklea, Ricky Frierson, Terrence Gatlin, Brandon Gilmore, Dantavious Hairston, Brymon Hamp, Jonathan Herrington, Gregory Hicks, Janarian Hill, Joseph Holiday, Quincy Holmes, Antonio Hoover, Nathaniel Jackson, William Jackson, Michael Jamison, Sellers Johnson, Xavier Johnson, Alexander Jones, Juarez Keyes, Carderrius King, Darran Lang, Malcom Lathan, Justin Lease, Legrane Lenox, Alvin Luckett, Ted Mangum, Chad Marshall, Carles Miles, Eris Moore, Bennie Motten, Brian Nettles, Terry Pierce, Casimir Poe, Wilfred Powell, Mario

> Ragland, Joseph Lee Reese, Jerry Rice, Emanuel Richardson, Ronaldo Rogers, Leon Ruffin, Jr., Dominico Saddler, Daryl Shinn, Lonnie Sims, Herman Sipp, Jr., Tyler Smith, Lynn Spurlock, Remington Steele, Keith Steinmetz, Darwin Strahan, Demarquis Tate, Christopher Thomas, Eric Thomas, Raymond Thomas, Airick Toins, Qy'Darrious Towns, Linnox Walker, Johnny Wallace, Corey James Wells, Efrem Whitfield, Daniel Williams, Mario Williams, Joe Womack, Dominico Young

The Clerk of Court is hereby directed to terminate those Plaintiffs as parties on the docket in this case.[9]

Furthermore, as noted above, the Court will not dismiss the claims of Charles Gayles, who is proceeding *pro se*. However, because he is not listed as a Plaintiff on the operative Second Amended Complaint [316], the Court finds that he should not remain part of *this* case. Rather, the Clerk of Court is hereby directed to reassign Charles Gayles a separate case number for his own individual *pro se* case.[10]

In addition, the Court notes, as it did above, that this action was initially filed as two separate cases. Because this case (4:20-CV-7-SA-JMV) is designated as the lead case, all filings must be made in this case. The member case is hereby SEVERED, and the Clerk of Court shall take all steps necessary to administratively close that case. The docket in the lead case shall be

---

[9] Cordarius Strong also filed a *Pro Se* Motion [329] requesting that his name be removed "from this civil action complaint." [329] at p. 1. Because the Court has already terminated him as a Plaintiff due to his failure to prosecute, the Motion [329] is DENIED AS MOOT. Furthermore, another Plaintiff, Stanley Luster, has filed a *Pro Se* Motion for Temporary Restraining Order [330] and a *Pro Se* Motion [337] regarding exhaustion of administrative remedies. However, Luster is represented by counsel and therefore cannot file documents in a *pro se* capacity. *See, e.g., Howard v. Epps*, 2010 WL 2640231, at *1 (N.D. Miss. June 28, 2010); *U.S. v. Hodges*, 2016 WL 7339884, at *1 (E.D. Tex. Nov. 9, 2016). Those Motions [330, 337] are hereby DENIED. The *Pro Se* Motion [338] filed by Kedric Steele is DENIED for the same reason. Several Plaintiffs (including Steele on a previous occasion) have filed motions in a *pro se* capacity while represented by counsel. The Court hereby specifically advises all Plaintiffs that doing so is not permitted, and represented Plaintiffs are hereby ordered to not file any additional *pro se* motions. Plaintiffs' counsel should similarly advise their clients of this prohibition. The Defendants' Motion to Strike [361] is DENIED AS MOOT.

[10] Gayles also filed a Motion for Extension of Time [342]. That Motion [342] is DENIED AS MOOT for purposes of this case. However, the Court will address it once the new case is assigned.

updated to include all active Plaintiffs in accordance with the operative Second Amended Complaint [316] and this Order. The Court notes that it typically does not administratively close member cases in this fashion; however, because all active Plaintiffs are now listed on the Second Amended Complaint [316] and the docket of the lead case will be updated to reflect all active Plaintiffs, the Court sees no need for two separate cases to remain pending. Proceeding in this fashion will not prejudice the parties in any way.

This case shall proceed as to the 80 Plaintiffs not subject to the Defendants' Motion [318]. All of those Plaintiffs are listed in the Second Amended Complaint [316] and are represented by counsel.

To summarize, the pending Motions are disposed of as follows: The Motion to Dismiss [318] is GRANTED. Cordarius Strong's *Pro Se* Motion [329] is DENIED AS MOOT. Stanley Luster's *Pro Se* Motions [330, 337] are DENIED. Kedric Steele's *Pro Se* Motion [338] is DENIED. Charles Gayles' *Pro Se* Motion [342] is DENIED AS MOOT. The Defendants' Motion to Strike [361] is DENIED AS MOOT.

SO ORDERED, this the 1st day of March, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE